**In the Interest of J.L.W., Minor Child, M.B., Father, Appellant.**

No. 93–1992.

Court of Appeals of Iowa.

Aug. 25, 1994.

Duane E. Hoffmeyer of Vakulskas & Hoffmeyer, P.C., Sioux City, for appellant.

Robert J. Rehan, Sioux City, for appellee L.B.

Stephen W. Allen, Onawa, Guardian Ad Litem for minor child.

Considered by HAYDEN, P.J., and SACKETT and CADY, JJ.

HAYDEN, Presiding Judge.

Toni W. and Michael B. were involved in a ten-year relationship. They had two sons born of this relationship who are not subject to the present proceedings. A third child, J.L.W., was born on July 27, 1991. Prior to J.L.W.'s birth, Toni and Michael had moved numerous times throughout the country. Toni and Michael were residing in West Virginia when she became pregnant with J.L.W. Toni's relationship with Michael became strained. Toni called her aunt, Leone B., a resident of Onawa, Iowa, and asked permission to live with her until the baby was born. Leone agreed, and Toni left Michael and moved in with Leone. Toni has a bipolar personality and has a long history of mental illness. She takes lithium to control her mood swings.

Prior to J.L.W.'s birth, Toni asked R.J., her first cousin, and his wife if they wanted to adopt J.L.W. Initially R.J. and C.J. were hesitant to commit. They ultimately reached an agreement with Toni. They took J.L.W. home from the hospital and cared for her. They waited until Toni decided what course of action she would to take. After J.L.W.'s birth, Leone helped Toni and her sons settle in Danbury, Iowa. Toni signed a release of custody of J.L.W. to R.J. and C.J. on September 24, 1991.

Michael called Leone's home several times during the period before J.L.W.'s birth. Michael learned Toni was living at Leone's. After that, Michael called Leone at least once a month until December 1991. Michael sent a package for one of the boys for his birthday and sent a Christmas gift, but did not send any gifts for J.L.W. When Toni informed Michael J.L.W. would be put up for adoption, the record does not reveal Michael took any action. During the first eight months after J.L.W.'s birth, Michael did not send any support, cards, or gifts to or for J.L.W.

On April 4, 1992, Toni wrote a letter to the attorney who drafted the release of custody agreement, informing him she wished to revoke the release. On April 8, 1992, Leone filed a petition for termination of Toni's parental rights. On August 9, 1992, the trial court entered an ex parte order placing temporary custody with R.J. and C.J.

Michael married another woman on April 3, 1992. Several days later, Toni contacted Michael and sent him the money for a bus ticket from Kentucky. Michael left his new wife and moved to Onawa. On April 15, 1992, Michael completed a financial affidavit for appointment of counsel in which he alleged he and Toni were married under common law. Michael did not reveal he had married someone else twelve days earlier. Michael and Toni later filed a joint application for temporary visitation with J.L.W. The trial court approved the application. Toni exercised a few supervised visits, but Michael did not. Michael moved back to

Kentucky in May 1992. Upon his return, he was arrested on a parole violation on an underlying narcotics distribution charge. Michael was sentenced to one year in jail. During the year he was in jail, Michael did not attempt to contact J.L.W. or inquire about her welfare. He did attempt, however, to visit his sons who were then in Ohio and obtain custody of them.

On December 30, 1992, Toni filed a withdrawal of her objection to termination. On January 14, 1993, Toni's parental rights were terminated. She does not appeal. Michael filed a request for admission from Leone, asking her to admit he had not at any time consented to or approved the termination of his parental rights to J.L.W. Termination of his rights to J.L.W. was heard on September 23, 1993. The trial court terminated Michael's parental rights on the ground Michael had abandoned J.L.W. Michael appeals. We affirm.

■ Michael argues there is insufficient evidence in the record to support the trial court's finding he abandoned J.L.W. Michael claims the only reason he did not contact Toni or J.L.W. was the fact Toni had moved from Onawa and did not tell him of their destination. He claimed Leone refused to tell him where they were. Michael also claimed he gave Toni support for the children and inquired as to Toni's mental health in regards to the children. Michael maintains even when he was in prison he attempted to comply with the court order for paternity blood testing. He further asserts the fact he was incarcerated should not be a significant factor in terminating his parental rights. He claims he only went back to Kentucky in May 1992 because he could not find employment in Iowa.

■ Appellate review of termination proceedings is de novo. *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981). We give weight to the findings of fact of the trial court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 745 (citation omitted).

■ We hold there is clear and convincing evidence Michael abandoned the child. Mi-

chael abandoned J.L.W., within the meaning of Iowa Code section 600A.8(3), through his conduct in failing to have any contact with her whatsoever, in failing to provide any financial or emotional support to her, and in failing to express significant interest in her welfare by contacting her caretakers. Our supreme court has recognized there exists a parental interest in the integrity of the parental unit, but such interest is not absolute and may be forfeited by certain conduct. *Dameron,* 306 N.W.2d at 745.

Michael has stated he never intended to abandon J.L.W. Clearly, actions speak louder than words. Intent can be shown through conduct. Michael has established a record of complete disregard for J.L.W.'s welfare: no visits, no financial support, no cards, letters, or gifts.

Michael claims the only reason he did not contact J.L.W. or her mother was the fact they moved from Onawa and did not tell him of their destination. However, the record reflects during the three-week time period between July 1, 1991, and July 27, 1991, Michael called Leone's residence. At the time, he learned J.L.W.'s mother was living there. Michael called Leone's residence at least once per month after July through December 1991. In November 1991 Michael spoke directly to J.L.W.'s mother. Michael did not come to Iowa during this time period.

During these phone calls to Leone, Michael inquired about J.L.W. on only one occasion. He asked if anything was wrong with J.L.W. Leone advised Michael in a phone call in September of 1991 J.L.W. would be put up for adoption. The record reveals Michael took no action in response to this information.

■ Michael's incarceration cannot serve as an excuse for his conduct. *See, e.g., In re R.L.F.,* 437 N.W.2d 599, 602 (Iowa App.1989). The general rule is unavailability to parent as a result of being incarcerated is no excuse. *Id.* at 602. An incarcerated parent must take full responsibility for the conduct which has resulted in his confinement. *See In re J.S.,* 470 N.W.2d 48, 51 (Iowa App.1991).

Michael also claimed he gave J.L.W.'s mother support for the children. J.L.W.'s

mother denies ever receiving any support for J.L.W. As stated previously, weight is to be accorded the findings of the trial court, especially in regard to the credibility of witnesses. *Dameron*, 306 N.W.2d at 745. With respect to Michael's credibility, it should not go unnoticed he filed a false sworn document in this proceeding. Michael failed to divulge his marriage to another woman a mere twelve days prior to stating he was the common-law husband of J.L.W.'s mother. We do not believe Michael provided any support for J.L.W.

The evidence before us demonstrates conclusively Michael has abandoned J.L.W. Michael's conduct dating back prior to her birth and continuing all the way to the termination hearing is the best evidence of his intention to abandon J.L.W. Michael has taken no action to visit with J.L.W., support her financially and emotionally, or interact with her in any manner. We determine Michael abandoned J.L.W. We also determine this is established by clear and convincing evidence.

■■■ Once we determine a ground for termination under 600A.8 has been established by clear and convincing evidence, we must next determine whether it is in the child's best interests to order termination of parental rights. At this step in the analysis, the paramount consideration is J.L.W.'s best interests. *See In re Morrison*, 259 Iowa 301, 144 N.W.2d 97, 103 (1966) (citation omitted).

Enough evidence exists to show Michael could not assume care of J.L.W. or provide a safe and secure environment for her in the reasonable future. Michael recently spent a year in prison for a parole violation concerning a drug charge. He has a history of alcohol-related arrests. He has never been through substance abuse treatment or counseling. He has demonstrated no stability of lifestyle, moving from place to place and job to job. He is an able-bodied man in his mid-thirties with no reported dependents, yet he has managed to acquire no assets. Michael has not demonstrated any ability to parent. Evidence of the parent's past performance may be indicative of the quality of future care he or she is capable of providing. *Dameron*, 306 N.W.2d at 745 (citations omitted). Children should not be forced to endlessly await the maturity of their parents. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983).

Since J.L.W.'s birth, she remained with R.J. and C.J. R.J. and C.J. have provided J.L.W. with a loving, secure, and stable life. R.J. and C.J. have exhibited their own ability to parent by raising two teenaged boys of their own. They have also opened their home to two specially challenged adults giving these individuals an opportunity to develop their full human potential. When this case is viewed from J.L.W.'s point of view, considering both her immediate and long-term best interests, the overwhelming weight of evidence favors keeping J.L.W. permanently in the only home she has ever known.

The legal ties between J.L.W. and Michael should be severed at this time so she can be adopted by the two people she has always known as her mother and father, R.J. and C.J. No sound reason exists for delaying this matter any further. The judgment of the trial court terminating Michael's parental rights to his minor child, J.L.W., is affirmed.

**AFFIRMED.**