**IN THE COURT OF APPEALS OF IOWA**

No. 14-1463
Filed April 22, 2015

**IN THE INTEREST OF A.H.,**
**Minor Child,**

**C.H., Mother,**
**Petitioner-Appellee,**

**A.O., Father,**
**Respondent-Appellant.**

_____

Appeal from the Iowa District Court for Wapello County, William S. Owens,

Associate Juvenile Judge.

A father appeals a district court order terminating his parental rights.

**AFFIRMED.**

Robert F. Bozwell, Jr., Centerville, for appellant.

Ryan J. Mitchell of Osborn, Milani, Mitchell & Goedken, L.L.P., Ottumwa,

for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

A father appeals a district court order granting the mother's petition to terminate his parental rights.

## I.    *Background Facts and Proceedings*

The mother and father met in 2007, and the mother became pregnant shortly thereafter. Their child, A.H., was born in August 2008. At the time of the child's birth, the mother and father resided together. The baby was primarily cared for by the mother.

Several months after the child was born, the father moved out. The father was subsequently arrested for failing to register as a sex offender[1] and went to prison for approximately one year. Upon his release from prison, the father made attempts to schedule visits with the child.

In 2011, the mother filed a petition to terminate the father's parental rights (Wapello County case no. JV4406), alleging the father abandoned the child.[2] Following a hearing in August 2011, the juvenile court filed an order in November 2011 dismissing the mother's petition due to evidence that the mother prevented the father from keeping in contact with the child.[3] At the 2011 hearing, the father

---

[1] The father entered an *Alford* plea, *see North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (observing a variation of a guilty plea where the defendant does not admit participation in the acts constituting the crime but consents to the imposition of a sentence), to lascivious conduct with a minor, stemming from sexual contact with his fifteen-year-old girlfriend when he was seventeen-years-old. The father has been convicted on two occasions for failing to register as a sex offender.

[2] The juvenile court in this proceeding took judicial notice of the court's findings and order in JV4406.

[3] For example, the juvenile court noted that with the assistance of Julie Seemann of First Resources Corporation, a supervised visit was scheduled in April 2010; the father arrived early and had diapers, snacks, and toys for the child, but the mother did not show up. Efforts by Seemann to contact the mother were not successful.

described the action to terminate his parental rights as a "blessing" because he hoped it would "kick start things" so he could begin seeing the child.

The father did not, however, use the 2011 proceeding as an opportunity to begin a relationship with the child. Over the next three years, the father did not see the child except for one occasion—from a distance—at Wal-Mart. He did not visit the child's home. He did not send the child any gifts, cards, or letters.[4] He talked to several attorneys to try to get a visitation order, but did not follow through because he had no money to pay their retainers. The father paid his court-ordered $30 per month in child support, which was deducted from his monthly disability check.

In February 2014, the mother filed a second petition to terminate the father's parental rights, alleging the father abandoned the child, *see* Iowa Code § 600A.8(3)(b) (2013), and stating in part:

> That the parent-child relationship now existing between [A.H.] should be terminated because of the following facts and grounds:
>     a. The biological father has failed to support the child financially.
>     b. The child is five (5) years of age and the parent, [A.O.], has abandoned the child by not maintaining substantial and continuous or repeated contact with the child by:
>     1. Failing to visit the child at least monthly when physically and financially able to do so;
>     2. Failing to have regular communication with the child;
>     3. Not residing with the child.

A hearing on the mother's petition took place in July 2014. The father testified on his behalf, claiming his parental rights should not be terminated. With regard to the efforts he had taken to establish a relationship with the child, the

---

[4] The father testified he did not send cards and acknowledge the child's birthdays, because he believed the mother would not allow him to.

father testified, "I tried to get a hold of [the mother] on Facebook, but it's blocked, so I can't get a hold of her." He further explained he had tried to "find" them at Wal-Mart "or somewhere out in the street" when he drove around the town in which the mother resided. The father stated he did not know the mother's phone number. He explained he had the mother's phone number at one time, but he "lost that phone that had her number in it." The father testified he did not know the mother's address, and that he thought the mother moved, but he never checked. He testified he did not try to send the child any letters because he "was afraid [the child] wouldn't get [them]."

The father testified he had been to prison again since the 2011 hearing, in 2013, for "five, six months." The father testified he had been to prison three times, due to violations of requirements relating to his status as a sex offender, and acknowledged his periods of incarceration amounted to approximately one-third of the child's life. The father's probation officer also testified with regard to the father's sex offender registry requirement violations.

The mother also testified. The mother stated she and the child had resided at the same residence for almost six years. She described the child—who was going into first grade—as well-adjusted, "pretty smart," "doing great," and "loved" by the child's teachers. The mother testified the father did not call her after the 2011 hearing. She stated she did not receive a letter or card from the father for the child or asking for a visit with the child. The mother acknowledged the father paid $30 in child support, but stated that amount only covers a small fraction of the child's needs, and that she otherwise provided for the child. The mother had been employed at a big box home supply store for

nearly one year, and before that she had worked at a convenience store for three years.

The mother testified she had been in a relationship for five years and was engaged to be married. The mother stated the child called her fiancé "Daddy," that her fiancé wanted to adopt the child, and that he was "the only daddy she knows." The mother stated she did not believe the child would recognize the father, but that if the father showed up at her house she would "let him see [the child]."

In August 2014, the juvenile court entered an order terminating the father's parental rights pursuant to Iowa Code section 600A.8(3)(b) ("The parent has abandoned the child."). The father appeals.

## II.    *Standard of Review*

We conduct a de novo review of termination proceedings under chapter 600A. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). "We accord weight to the factual findings of the juvenile court, especially those regarding witness credibility, but we are not bound by them." *Id.* The paramount concern in termination proceedings is the best interest of the child. *See* Iowa Code § 600A.1; *see In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (holding best interests are to be determined within statutory framework and not upon the court's own perceptions).

## III.    *Statutory Grounds for Termination*

The father challenges the sufficiency of the evidence to support the juvenile court's conclusion that he abandoned A.H.

"To abandon a minor child" means:

> [A] parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(19). A parent is deemed to have abandoned a child who is six months or older

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>     (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>     (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>     (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b). Paragraph 600A.8(3)(c) further provides, "The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified in paragraph 'a' or 'b' manifesting such intent, does not preclude a determination that the parent has abandoned the child."

The father claims "[t]he evidence presented at trial established that [he] desired to have a relationship with his [child], provided [the child] with financial support, but was unable to actively participate in [the child's] life due to circumstances beyond his control." Specifically, the father claims his "efforts were thwarted by his lack of funds to hire an attorney and his belief [the mother] had moved," and he "also felt threatened by [the mother's] boyfriend and had

been advised by his attorney not to simply go get his [child] and force the issue but to obtain the assistance of a lawyer instead."

The father has not had contact with the child since prior to the 2011 hearing. In that time, he has not called the child or the mother, visited the child's home, or sent letters or cards to the child. He has not asked the mother to see the child. The father's concern about the mother's fiancé threatening him is based on an incident that took place prior to the 2011 hearing. In addressing that issue, the court stated:

> At the August 2011 hearing [the mother] and [the father] both testified there was animosity between [the father] and [the mother]'s fiancé . . . . [The father] testified at the July 25, 2014 hearing that [the mother's fiancé] had once threatened him with a gun (prior to the August 2011 proceeding), but no charges were ever filed.

Considering the amount of time that had passed since the alleged threat and the other routes the father could have taken to schedule a visit with the child, we give little weight to his testimony regarding the incident taking place prior to the 2011 hearing as being a major barrier in his ability to establish or maintain contact with the child. We cannot conclude either the mother or her fiancé prevented the father from visiting the child. As the juvenile court stated:

> At the hearing in August 2011 [the father] testified he looked upon the first petition seeking to terminate his parental rights as a "blessing," and hoped it would "kick start things" so he could begin to have visits with his [child]. [The father] testified at that time he wanted to take [A.H.] to the park and spend time with [the child]. He also testified he had family who lived in the [area of the mother's residence] and that they frequently asked about [A.H.].
> The evidence presented in this proceeding, however, indicates [the father] did not use that prior proceeding or the juvenile court's order dismissing the petition as an opportunity. Rather, he has done little, if anything, to further the goals he set for himself during his sworn testimony in that August 2011 hearing. To [the father]'s credit he has paid his court ordered child support

obligation, but the evidence shows he has written no cards or letters to [A.H.], has not visited her home, and other than seeing [A.H.] from a distance on one occasion has not had any contact with her in nearly three years.

So, while the juvenile court found in November 2011 that [the father]'s failure to have contact with [A.H.] was, at least in part, due to [the mother]'s failure to permit visitation, the evidence in this proceeding cannot support a similar finding. That being the case, [the father]'s failure to act following the dismissal of the first petition for termination of his parental rights evidences a clear intent to abandon or desert his responsibilities as a father to [A.H.].

We conclude the evidence presented in this case satisfies the statutory grounds for abandonment under section 600A.8(3)(b). We affirm the juvenile court's finding on that issue.

## IV.    *Best Interests*

We also must next determine whether termination of the father's parental rights was in the child's best interests. *See In re J.L.W.*, 523 N.W.2d 622, 625 (Iowa Ct. App. 1994). Iowa Code section 600A.1 addresses the factors in the best interests analysis:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life. . . .

The father has seen the child only a handful of times since the child was an infant, and he acknowledges he has not established a relationship A.H., who is now six years old. The mother testified the child would not recognize the father, the child calls her fiancé "daddy," and her fiancé has been the only father

the child has ever known. On the issue of best interests, the juvenile court acknowledged these facts, stating:

> In this case, [the father] certainly has issues he needs to address. He has a conviction for an offense that requires him to register as a sex offender, and he has had a difficult time remembering to keep his registration current or to otherwise no violate the conditions of his probation. This has resulted in him being convicted on at least two occasions for violating the law related to his status as a sex offender, and has caused him to be incarcerated on three separate occasions.
>
> The principle concern is that although [the father] testified at the August 2011 hearing he considered the first action to be a "blessing" and wanted to use it as motivation to seek more visits with his [child] he has done virtually nothing to fulfill that promise. He has written [A.H.] no cards or letters, sent [the child] no gifts, and other than a brief encounter at a local retail store [the father] has had no face-to-face contact with his [child] since the last order was entered in November 2011.
>
> [The mother] is currently employed, supports [A.H.] with little assistance from [the father], and is engaged to a man she hopes to marry. [The mother] testified she has been in a relationship with [her fiancé] for more than four years. [The mother] testified [A.H.] calls [her fiancé] "Daddy", and considers him to be [the child's] father. It is [the mother]'s intention to marry her fiancé and hopes he will then adopt [A.H.].
>
> Given the record before the juvenile court including [the father]'s failure to fulfill his promise to use the dismissal of the prior proceeding as a way to "kick start" his relationship with [A.H.], and [the mother]'s testimony regarding [A.H.]'s relationship with [the mother's fiancé] the record establishes by clear and convincing evidence that a termination of [the father]'s parental rights would be in [A.H.]'s best interests.

We agree with the court that termination of the father's parental rights is in the child's bests interests.

## V. *Conclusion*

We affirm the juvenile court's order terminating the father's parental rights to A.H. pursuant to Iowa Code section 600A.8(3)(b).

**AFFIRMED.**