## IN THE COURT OF APPEALS OF IOWA

No. 16-1238
Filed March 22, 2017

**IN THE INTEREST OF M.H. and V.H.,**
**Minor children,**

**K.H., Father,**
     Petitioner-Appellee,

**A.H., Mother,**
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Kossuth County, Ann M. Gales, District Associate Judge.

The mother appeals from the termination of her parental rights under Iowa Code chapter 600A. **AFFIRMED.**

Pamela A. Wingert of Wingert Law Office, Spirit Lake, for appellant mother.

K.H., Wesley, pro se appellee father.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals from the district court's order terminating her parental rights to her two children, M.H. and V.H., now ages six and seven, respectively. The children's father initiated this action in April 2015.

We conduct a de novo review of termination proceedings under chapter 600A. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We defer to the factual findings of the district court, especially witness-credibility findings, but we are not bound by them. *See In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). In termination proceedings, the best interests of the children involved are "the paramount consideration," but we also give "due consideration" to the interests of the children's parents. *See* Iowa Code § 600A.1 (2015). The termination findings must be based on clear and convincing proof. Iowa Code § 600A.8.

Following a two-day hearing in September 2015, the court terminated the mother's parental rights pursuant to Iowa Code section 600A.8(3)(b)[1] and (9).[2]

---

[1] Iowa Code section 600A.8(3)(b) allows the court to terminate the rights of a parent if it finds the parent has abandoned the child. It states, in part:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights

On appeal, the mother only challenges the court's determination there was clear and convincing evidence to terminate her rights under section 600A.8(3)(b). Because the mother does not challenge the statutory grounds pursuant to section 600A.8(9), she has waived any claim of error regarding that statutory ground for termination. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."); *see also In re C.B.*, 611 N.W.2d489, 492 (Iowa 2000) ("We have long recognized an appellant must identify alleged error on appeal."). Thus, we find the statutory grounds for terminating have been met pursuant to section 600A.8(9). *See In re Voeltz*, 271 N.W.2d 719, 723 (Iowa 1978) ("If one of these grounds is established by clear and convincing evidence the termination will be upheld.").

Next, we consider whether the termination of the mother's parental rights is in the children's best interests. *See In re J.L.W.*, 523 N.W.2d 622, 625 (Iowa Ct. App. 1994) ("Once we determine a ground for termination under 600A.8 has been established by clear and convincing evidence, we must next determine whether it is in the child[ren]'s best interests to order termination of parental rights."). In doing so, we give "due consideration" to the mother's interests. *See* Iowa Code § 600A.1.

---

hearing and during that period openly holding himself or herself to be the parent of the child.
Iowa Code § 600.8(3)(b)(1)–(3).

[2] The court may terminate a parent's rights pursuant to Iowa Code section 600A.8(9) if there is clear and convincing evidence "[t]he parent has been imprisoned for a crime against the child, the child's sibling, or another child in the household, or the parent has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years."

In August 2012, both children were in the car when the mother, while intoxicated, purposely ran over the father's foot with the vehicle.[3] As a result, the mother received a one-year suspended sentence and lost her driving privileges.[4] The sentence was later imposed after the mother's probation officer filed a report of probation violation based on multiple driving-while-revoked charges. The probation officer added three addendums to the report, the first after the mother was charged with possession of methamphetamine on October 18, 2013; the second after the mother intentionally hit her then-boyfriend with a vehicle on November 10; and the third after the mother arrived to a meeting with her probation officer—two and a half hours late—intoxicated on December 26.

Due in part to the father's interference with the mother's relationship with the children, but largely due to the mother's continued poor choices, the mother has not seen the children since Christmas Day, 2013, and she has not spoken to them since September 23, 2014.[5] According to the district court, between August 2012 and June 2015, the mother was "convicted of a total of eleven misdemeanor crimes, including five aggravated misdemeanors, four serious misdemeanors, and two simple misdemeanors. [The mother] received at least twelve additional misdemeanor charges which were dismissed as part of plea

---

[3] Although the mother denied purposely attempting to hit or run over the father, the police report from the incident includes the statement of an eyewitness, claiming, in part, "I heard yelling outside went outside saw couple in green jeep in vehicle yelling at each other. She yelled 'get out' he did and walked around to driver side past vehicle and from a dead stop the driver (female) took off trying to run over man and hit him with car."

[4] The mother has not had a valid license since, and she testified it would be suspended "for more than a couple years."

[5] The mother had somewhat regular visitation with the children between August 17, 2012, and her incarceration January 1, 2014. She often spoke to the children on the phone while she was incarcerated from January 1 to September 23, 2014, but she has not had any contact with the children since then.

agreements." Between August 2012 and the September 2015 termination hearing, the mother was in and out of jail at least fifteen times, for a total period of incarceration of approximately 360 days.

At the time of the termination hearing, the mother was living with a new boyfriend who had been hospitalized more than once for mental-health issues in the two months before the termination hearing. The man had also just been arrested for harassment involving his estranged wife. The mother denied having ever used illegal drugs and denied having an issue with alcohol. However, as the district court noted, the mother was arrested for possession of methamphetamine, and at the time she was arrested, she admitted to officers that she had used the substance within two days. The mother had shown up late to her probation meeting while drunk, and both the father and the paternal grandmother testified the mother had shown up for visits with the children appearing to be intoxicated a few times.

We acknowledge the father restricted the mother's chances to see or be part of the children's lives as he saw fit. But the mother took no actions to overcome the restrictions. Although her parents hired her an attorney to pursue a court-ordered custody agreement, the custody case was ultimately dismissed. From the record before us, it appears the mother failed to communicate with her attorney—possibly due in part to repeated stints in jail. Additionally, a number of the father's conditions are not unreasonable. He had concerns the mother was living with an abusive boyfriend—a fact the mother repeatedly shared on social media, including bruises she claimed were a result of abuse. He was also concerned about the mother's drug and alcohol use. Finally, he had concerns

the mother would take the children out of the country if she was given time alone with them—also based on a number of threats the mother made on social media.

While the father is not blameless, the mother has not been part of these young children's lives for a number of years. According to the guardian ad litem (GAL), both children expressed to her that they do not want to see their mother. The GAL recommended that the mother's rights be terminated, noting that the mother has "put her own interests and desires ahead of her children" and questioning whether the children would be safe with the mother "due to her history of violence against ex-boyfriends, substance abuse, criminal record, and poor decision-making in general." And as the GAL noted, the children were doing well in the father's care.

Based on our de novo review of the record, termination of the mother's parental rights is in the best interests of the children. Thus, we affirm the district court's order.

**AFFIRMED.**