# IN THE COURT OF APPEALS OF IOWA

No. 16-1497
Filed April 5, 2017

**IN THE INTEREST OF K.S.,**
**Minor child,**

**J.S., Father,**
      Petitioner-Appellee

**M.K., Mother,**
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Linn County, Casey D. Jones, District Associate Judge.

The mother appeals from the district court's order terminating her parental rights to her child, K.S., now age sixteen. The children's father initiated this action under Iowa Code section 600A.8(3)(2016) in April 2016. **AFFIRMED.**

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant mother.

Crystal L. Usher of Nazette, Marner, Nathanson & Shea L.L.P., Cedar Rapids, for appellee father.

Kristen A. Shaffer of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals from the district court's order terminating her parental rights to her child, K.S., age sixteen at the time of trial. The children's father initiated this action in August 2016.

**I. Factual and Procedural Background.**

K.S.'s biological mother and father were married at the time of her birth in 2000. In 2005, the parties dissolved their marriage by decree. The decree awarded shared physical care of K.S. to the mother and father. The father married his current wife in 2006. The stepmother has been a caregiver to K.S. for approximately ten years.

The decree was modified multiple times, in part due to the mother's methamphetamine addiction and its resulting harm to K.S. In 2008, for example, the Iowa Department of Human Services (DHS) completed a founded child abuse report against the mother for denial of critical care. DHS determined that although the mother was not actively using methamphetamine in the presence of K.S., the effects of methamphetamine were still in her system while the mother was caring for K.S., and supplies used to make methamphetamine were present in the home. In 2009, the parties modified the custody provisions of the decree requiring a one-year sobriety period before the mother could have unsupervised visitation. The mother never attempted to demonstrate sobriety and the father testified the mother has never been sober from methamphetamine for a period of one year. In 2011, the mother successfully moved to modify the decree to receive more traditional visitation, and the father testified that he attempted to give her a chance at more visits.

In 2012, the DHS issued another founded child abuse report against the mother based on methamphetamine use in the presence of K.S.[1]  In 2013, the court entered a default decree modifying the custody provisions so that the father had sole discretion over visitation regarding the length, time, and degree of supervision for each visit with K.S.  According to the father's testimony, the parties attempted visitations between the mother and K.S. at the father's home, but because the visits were stressful and often ended in arguments, the father moved visits to the maternal grandparents' home, pursuant to the decree provisions.  The parties planned a visit around Christmas in 2013 at the maternal grandparents' home but the mother did not attend.  Apart from the occasional text or Facebook communication referencing visitation, the mother has not attempted to schedule any official visitations at the maternal grandparents' home or with any other qualified supervisor since 2013.  In fact, K.S. has not seen her mother at an official visit since 2013.  The father testified the mother attempted unannounced, unsupervised visits when the father and stepmother were not at home, which was in violation of the most recent modification order.

The mother's methamphetamine abuse was a factor during the termination proceedings.  In July 2016, nearly one month before the termination trial, the mother left a voicemail for the father stating she was arrested for possession of methamphetamine.  The disposition of the possession charge, if any, is not a part of this record.

---

[1] Details from this incident are not apparent from the record.  Only the "Notice of Child Abuse Assessment" section of the 2012 report was included in the record.  Testimony from the father indicated the abuse was based on the mother's arrest for methamphetamine use in the presence of K.S.  The mother was not present at the termination hearing, but was represented by counsel.

The mother's substance-abuse issues have taken an emotional and physical toll on K.S. throughout her childhood. K.S.'s guardian ad litem (GAL) reports that K.S. has trust and communication issues with the mother due to the mother's methamphetamine use. Text messages and other communications also indicate a failing relationship between the mother and K.S. These communications were often in violation of the most recent modification order. In the communications, K.S. often expresses frustration and anger based on the mother's threats, abrasive language, inappropriate contact, and methamphetamine use. K.S. sought treatment for depression, self-harm, and suicidal thoughts based, in part, on K.S.'s difficulties with her mother. The child's therapist raised concerns over the mother's inappropriate behavior suggesting it is a source of K.S.'s stress and anxiety.

In the years leading up to the termination trial, the mother and father attempted to facilitate the stepmother's adoption of K.S. On multiple occasions, the mother expressed consent to termination, but she would often withdraw consent at the last minute. In 2014, the mother told the stepmother, "I'm asking you to adopt her," and "just mail the [consent] papers and you won't have to deal with me anymore," as indicated by multiple text messages. The mother also expressed to K.S. that she wanted the stepmother to adopt her. In fact, paperwork to execute the termination and adoption was delivered to the mother in 2015 at her request. However, she never followed through and the father testified he delayed filing his termination application because of the potential the mother would consent. At trial, the stepmother testified that she is ready, willing, and able to adopt K.S.

**II. Standard of Review.**

We conduct a de novo review of termination proceedings under chapter 600A. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We defer to the factual findings of the district court, especially witness-credibility findings, but we are not bound by them. *See In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). In termination proceedings, the best interests of the children involved are "the paramount consideration," but we also give "due consideration" to the interests of the children's parents. *See* Iowa Code § 600A.1 (2016). The termination findings must be based on clear and convincing proof. Iowa Code § 600A.8.

**III. Discussion.**

On appeal, the mother argues the statutory grounds were not satisfied because she maintained financial support and continued contact with K.S. To the extent the juvenile court found she did not visit with K.S., the mother argues the father prevented her from maintaining such contact.

In a private termination-of-parental-rights proceeding, the petitioner must establish by clear and convincing evidence that a statutory ground for termination exists. *See* Iowa Code § 600A.8; *In re B.L.A.*, 357 N.W.2d 20, 22 (Iowa 1984). If a ground is proved, the petitioner must also establish termination of parental rights is in the child's best interests. *See In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010). Although the interests of the parents must be given due consideration, our primary concern is the child's best interests. *See* Iowa Code § 600A.1 ("The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting this chapter."); *A.H.B.*, 791

N.W.2d at 690–91. Thus, we conduct a two-step analysis in our review. First, we determine whether the statutory requirements are established. Second, we review whether termination is in the best interests of the child.

1. ***Statutory Requirements.***

Under Iowa law, abandonment of a minor child is one of the grounds authorizing the termination of parental rights under Iowa Code chapter 600A. *See* Iowa Code § 600A.8(3). The petitioner need not establish the mother's subjective intent to abandon the child. *See id.* § 600A.8(3)(c); *In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (recognizing a parent's subjective intent does not preclude a finding of abandonment); *see also In re C.J.F.M.*, No. 10-0166, 2010 WL 3157756, at *2 (Iowa Ct. App. Aug. 11, 2010) (recognizing the "'intention to abandon' is no longer a statutory element in the definitions of Iowa Code chapter 600A"). Nor is he required to show he or anyone else made diligent efforts to encourage the mother to perform the acts specified in section 600A.8(3)(b). See Iowa Code § 600A.8(3)(c). Rather, abandonment is determined by a parent's actions or lack thereof. *See In re J.L.W.*, 523 N.W.2d 622, 624 (Iowa Ct. App. 1994) ("Clearly, actions speak louder than words. Intent can be shown through conduct."), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Section 600A.2(19) defines abandonment of a minor child as "reject[ing] the duties imposed by the parent-child relationship . . . , which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child."

Iowa Code section 600A.8(3)(b) provides that a parent of a child six months old or older will be deemed to have not abandoned the child if that parent maintains:

> substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.*

There is no dispute the mother is current on her child-support obligation. The record indicates she pays approximately seventy-three dollars per month, and she receives a limited amount in social security disability. There is also no dispute the mother did not live with the child for a period of six months within the one-year period immediately preceding the termination hearing, or that she failed to visit the child monthly. Therefore, the remaining issue is whether the father prevented the mother from visiting K.S., and if so, whether the mother maintained "[r]egular communication with [K.S.] or with the person having care or custody of the child." *Id.*

The mother argues she regularly sought visits with K.S. but the father actively prevented her from maintaining contact with her daughter. However, the district court found, "[The father and stepmother have] tried many times over the

years to facilitate visitations between [the mother and K.S.]," and, "There is no evidence that the [father and stepmother] have ever prevented [the mother] from seeing the child unless there were concerns for [K.S.]'s safety because of [the mother's] abuse of methamphetamine. [The father] has actually tried many times over the years to facilitate visitation between [the mother and K.S.]." We agree.

K.S.'s father was granted sole legal custody and the sole discretion to allow or refuse visits between the mother and K.S in the most recent modification to the parties' dissolution decree. His legal status as sole legal custodian also allows him to refuse the mother's requests for visits. The father testified that he attempted to schedule visitations and the mother has failed to attend any since 2013. In 2013 and 2015, for example, the father attempted to schedule a visitation at the maternal grandparents' house. The mother failed to attend.[2] Furthermore, the mother also had the ability to arrange visitations through other qualified supervisors, but she failed to do so and only attempted sporadic text and Facebook messaging with the stepmother and daughter. Notably, the communications with the daughter were unannounced and often unwanted—the mother used an alias to contact K.S. through Facebook after K.S. blocked her mother's profile. While the father acknowledged at trial the mother discussed visitation on a few occasions, he also testified that her volatile nature, and his experience with her methamphetamine use over the last twenty years, led him to believe that visitations were not in the best interest of K.S. Any restrictions placed on the mother's visitation requests were validly based on the mother's

_____

[2] The parties dispute the reason for the mother's absence. The father claims it was the mother's methamphetamine use, while the mother claims she was sick. The district court found it was based on the mother's methamphetamine abuse.

substance-abuse and mental-health issues. *See G.A.*, 826 N.W.2d at 129 (finding the mother did not prevent the father from exercising visitation with the child where the mother placed reasonable conditions on visitation in light of the father's substance-abuse history and noting the father made no attempt to comply with the conditions). It is reasonable for the father to require supervision and advance notice in light of the mother's history of substance abuse. We agree with the district court the father did not prevent the mother from visiting K.S. under Iowa Code section 600A.8(3)(b).

2. ***Best Interests.*** Next, we consider whether the termination of the mother's parental rights is in the child's best interests. *See J.L.W.*, 523 N.W.2d at 625 ("Once we determine a ground for termination under 600A.8 has been established by clear and convincing evidence, we must next determine whether it is in the child's best interests to order termination of parental rights."). In doing so, we give "due consideration" to the mother's interests. *See* Iowa Code § 600A.1.

The record contains multiple examples of harm the mother's contact has caused K.S. The GAL report, for example, concludes it is in K.S.'s best interest to terminate the mother's parental rights because:

> 1. It has been a significant period of time since the child has had visitation with her mother.
> 2. The communication between the child and her mother is detrimental to the mental health of the minor child.
> 3. The minor child wishes her mother would not contact her.
> 4. [The mother] continues to use methamphetamines. This likely has played a role in her interactions with [K.S.].
> 5. [The stepmother] is willing to adopt the child if the termination is granted.

The child's counselor also voiced concerns with maintaining contact with the mother. In a letter to the court the counselor states, "[K.S.] has voiced and processed many upsets in the relationship with her biological mother and the stress that this relationship has caused her over the years . . . . [K.S.] has also expressed her desire to not have any contact with [the mother] because of the negative impact on her mood and increased stress when contact does occur." K.S.'s doctor also stated, "[K.S.] has expressed that she does not wish to be engaged in a relationship any longer with her biological mother, including any visitation or communication."

Moreover, the communications between the mother and K.S. indicate a toxic relationship. The district court stated,

> [The mother] contacted her daughter via [F]acebook and text messages for a three or four year period, again in violation of the decree. [The mother] would generally use an alias to get around [K.S.]'s attempts to block her. . . . Many of the exchanges are extremely troubling to read and detail [K.S.]'s conflicted relationship with her mother. While it is clear that [K.S.] loves her mother, it is further clear that she feels confused, abandoned and mislead by her mother's words and actions. In some of the entries, [K.S.] expresses that she does not want [the mother] to be her mother any longer. [The mother] also frequently threatens in the messages that she does not want [K.S.] as a daughter anymore. *The exhibits paint a picture of severe dysfunction in this mother-daughter relationship.*

(emphasis added). Based on the dysfunctional relationship in the past and the daughter's desire to cease contact with her mother, we believe continuing the relationship would only cause more dysfunction and stress. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (Stating a parent's past behavior is indicative of their future behavior). As a result, it is not in the best interest of K.S. to continue the relationship.

The mother next argues that termination is not in K.S.'s best interests because she provides financial support. The record indicates the mother pays approximately seventy-three dollars per month. The father, however, testified that there were periods of time without financial support. Furthermore, he stated he can adequately support K.S. without the mother's limited financial support.

Based on the above and after our careful review of the record, termination of the mother's parental rights is in the best interests of the child. Thus, we affirm the district court's order.

**AFFIRMED.**