**IN THE COURT OF APPEALS OF IOWA**

No. 16-1526
Filed May 3, 2017

**IN THE INTEREST OF I.M.H.,**
**Minor child,**

**B.E.R., Mother,**
       Petitioner-Appellee,

**J.E.J.H., Father,**
       Respondent-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Jennifer S.

Bailey, District Associate Judge.

A father appeals the termination of his parental rights to his child.

**AFFIRMED.**

Jeffrey L. Powell of The Law Office of Jeffrey L. Powell, P.L.C.,

Washington, for appellant father.

Curtis R. Dial of Law Office of Curtis Dial, Keokuk, for appellee mother.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

A father appeals from the termination of his parental rights. Upon our de novo review, *see In re M.M.S.*, 502 N.W.2d 4, 5 (Iowa 1993), we find clear and convincing evidence supports termination under Iowa Code section 600A.8(3) (2016), and we conclude severing the child's relationship with her biological father serves the child's best interests. We therefore affirm.

### I. Background Facts and Proceedings.

The mother and the father were never married and were in a relationship from 2005 to 2007. A child, I.H., was born to the couple in 2007. The parents broke up a few months after the child was born. The child remained with the mother, and the father would assist with child care while the mother worked second shift at a hospital. In May 2008, visitations between the father and the child were denied by the mother at the direction of the Iowa Department of Human Services due to an ongoing investigation, which ended with an unfounded child abuse report. On three or four occasions in 2008, the father visited the child at her babysitter's home. These visits ceased when the mother found out and changed babysitters. The father has had no meaningful contact with the child since then.

After 2008, the father ceased making requests for visits, but sent an occasional text to the mother requesting she tell the child "Happy Birthday" or "Merry Christmas." The text messages stopped in 2010. In 2012, the mother filed a termination-of-parental-rights action. The petition was denied by the juvenile court in 2013, and this court affirmed the denial. *See In re I.M.H.*, No.

13-0324, 2014 WL 1228376, at *1 (Iowa Ct. App. Mar. 26, 2014). Since that action, the father has made no attempts at contacting the child or the mother.

The mother filed the present action for termination of parental rights in March 2016. After a hearing, the juvenile court granted the mother's petition. The court found clear and convincing evidence established that the father had abandoned the child pursuant to Iowa Code sections 600A.8(3)(b) and .8(4). Further, the court found termination of the father's parental rights was in the best interests of the child.

The father appeals.[1] He contends the juvenile court erred in determining that there was sufficient evidence to establish he abandoned the child in accordance with section 600A.8(3)(b).[2] While this court is not bound by the district court's factual findings when reviewing the record de novo, we give weight to them, especially when considering credibility of witnesses. *See In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

## II. Discussion.

### A. Abandonment.

In a private termination-of-parental-rights proceeding, the petitioner must establish by clear and convincing evidence that a statutory ground for termination exists. *See* Iowa Code § 600A.8; *In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010). If a ground is proved, the petitioner must also establish termination of

---

[1] The mother waived filing a brief pursuant to Iowa Rule of Appellate Procedure 6.903(3).

[2] The father also argues the juvenile court erred in determining that he failed to support the child financially without good cause. *See* Iowa Code § 600A.8(4). Since we find termination was proper under section 600A.8(3)(b), we need not consider whether termination was proper under section 600A.8(4). *See In re B.L.A.*, 357 N.W.2d 20, 22 (Iowa 1984) (holding that if the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm).

parental rights is in the child's best interests. *See A.H.B.*, 791 N.W.2d at 690. Although the interests of the parents must be given due consideration, our primary concern is the child's best interests. *See* Iowa Code § 600A.1 ("The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting this chapter."); *A.H.B.*, 791 N.W.2d at 690-91.

Abandonment of a minor child is one of the grounds authorizing the termination of parental rights under Iowa Code chapter 600A. *See* Iowa Code § 600A.8(3). Section 600A.2(19) defines abandonment of a minor child as "reject[ing] the duties imposed by the parent-child relationship . . . , which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." A parent is deemed to have abandoned a child who is six months or older

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b). A showing of abandonment does not require total desertion; feeble contacts can also evince abandonment. *See M.M.S.*, 502 N.W.2d at 7-8.

The father argues the mother and her husband impeded the father from maintaining contact with the child.[3]  In addressing this issue, the juvenile court found:

> It is uncontroverted that [the father] has not visited [the child] on a monthly basis, nor has he maintained regular communication with [the child or the mother], pursuant to Iowa Code section 600A.8(3)(b)(1) and (2).  It is [the father's] contention that he has failed to maintain such contact because he was prevented from doing so by the custodial parent, [the mother].  The court does find that clear and convincing evidence has been presented that [the mother], as the custodial parent, did not prevent him from having monthly visitation, which he was physically and financially able to undertake, if he had so chosen, pursuant to Iowa Code section 600A.8(3)(b)(1).  The court does further find that even if it could be found that [the father] was physically and financially unable to visit the child, or was prevented from visiting [the child] by [the mother], he did not attempt regular communication with [the child] or [the mother], pursuant to Iowa Code section 600A.8(3)(b)(2).  Finally, it is uncontroverted that [the father] has not openly lived with [the child] for a period of six months within the one-year period immediately preceding the termination-of-parental-rights hearing, pursuant to Iowa Code section 600A.8(3)(b)(3).
>
> The [mother] did testify that her phone number did change in 2010, and she did not seek out [the father] to give him her new phone number.  She likewise did not seek out [the father] to supply her new address [when she moved] in 2015.  She last saw [the father] in the prior termination-of-parental-rights action . . . , which went to hearing in 2013.  She does further indicate that she never told [the father] which school [the child] was attending . . . .  Pursuant to Iowa Code section 600A.8(3)(c), the court cannot require [the mother] to make a diligent effort to encourage [the father] to complete the acts contemplated under 600A.8(3).  Indeed, [the mother] did not encourage [the father] in his contact by constantly updating him of her contact information, which the court does find that she was not obligated to do under Iowa Code section 600A.8(3)(c).
>
> However, [the mother and her husband] did both testify that they did not believe that [the father] should have contact with [the child].  In fact, [the mother's husband] did testify that he would not have allowed contact between [the child] and [the father] without a court order.  [The mother] did state that for the last three years it

---

[3] The mother and her current husband began their relationship in 2007.  They married in 2010.

was her belief that [the father] should not have contact with [the child]. However, this belief, which was held by both [the mother and her husband], was never communicated to [the father], either directly or through a third party. So, although [the father's] attempts to see [the child] may have indeed been denied by [the mother and her husband], he was never actually denied, because he never attempted to see [the child]. Further, he was not aware of the subjective intents of the [mother and her husband], so as to discourage any such attempts.

In his testimony, [the father] was steadfast in his position that the [mother] has prevented him from maintaining contact with his daughter. However, [the father's] testimony was very inconsistent and contradictory on that point. At one point, he claimed to have no way of contacting [the mother] to see [the child], which caused him to have been prevented from seeing [the child] by [the mother], but then did immediately contradict that contention through other testimony. [The father] did know the [mother's address] until she moved in 2015 . . . , as [the mother's] address was on the termination-of-parental-rights petition filed . . . in 2012, and as testified to by [the mother] at the termination hearing in 2013. He did concede this point when confronted by [the mother's] counsel. Additionally, in the fall of 2013, both [the mother] and [the father] did testify that they were at the same high school sporting event, as was [the child], and [the father] did nothing to attempt contact with [the mother] or ascertain contact information for [the child] in order to set up future contact.

[The mother] did testify that at the prior termination-of-parental-rights hearing, [the father] did testify that he planned on introducing himself slowly to [the child] and doing what she needed, in that regard. By [the father's] own testimony, since 2013 there have been no attempts by [the father], or his family, to see [the child]. He conceded that he has done nothing since the last termination-of-parental-rights hearing. He did also eventually admit that he knew where [the mother] was living [before she moved] the whole time but didn't do anything because there would have been an altercation between [the mother's husband] and himself. He did also admit that he knew how [the child] was doing in school, from a separate source, contradicting the contention that he did not know where she was going to school and couldn't ascertain her whereabouts. Likewise, he did cryptically indicate that he "had sources" to find out information about [the child] over the years, including a prior neighbor of the [the mother and her husband,] who would let him know how [the child] was doing. In his initial testimony, [the father] did claim that he tried [the mother's] old cell phone number after 2010, but with no success, as it had changed. However, in later testimony, he did testify that he sent text messages and called prior to the last court case in 2013, indicating

> that he knew her new phone number. He did also finally contradict his prior testimony by admitting that he knew their [prior] address . . . and that they had relocated . . . .

> What was consistent between [the mother's] and [the father's] testimony was the fact that [the father] has done nothing to contact his daughter or the custodial parent since he walked out of the courtroom in the last termination-of-parental-rights hearing in 2013. He had the physical and financial means to do so but chose not to so act. He was not prevented from so acting by [the mother]. He cannot blame the actions of [the mother's husband], nor does the court find credible the assertion by [the father] that to go to their home, would result in [the mother's husband] initiating a physical altercation with [the father].

Upon our de novo review, we agree with the juvenile court's fact-findings.

Additionally, the father argues he did not intend to abandon the child. That argument will not garner a reversal. The petitioner need not establish the father's subjective intent to abandon the child. *See* Iowa Code § 600A.8(3)(c); *In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (recognizing a parent's subjective intent does not preclude a finding of abandonment); *see also In re C.J.F.M.*, No. 10-0166, 2010 WL 3157756, at *2 (Iowa Ct. App. Aug. 11, 2010) (recognizing the "'intention to abandon' is no longer a statutory element in the definitions of Iowa Code chapter 600A"). Nor is she required to show she or anyone else made diligent efforts to encourage the father to perform the acts specified in section 600A.8(3)(b). *See* Iowa Code § 600A.8(3)(c). Rather, abandonment is determined by a parent's actions or lack thereof. *See In re J.L.W.*, 523 N.W.2d 622, 624 (Iowa Ct. App. 1994) ("Clearly, actions speak louder than words."). The subjective intent of the parent unsupported by the acts specified in section 600A.8(3)(b) will not preclude a determination the parent has abandoned the child. *See* Iowa Code § 600A.8(3)(c).

Finally, the father argues that although he "could have been more aggressive in pursuing legal custody rights to [the child], [the mother] could have done far more to facilitate a relationship between father and daughter." The mother had no such obligation. *See id.* ("[T]he court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in paragraphs 'a' or 'b' [of section 600A.8(3)].").

As the juvenile court found, the father did absolutely nothing to contact the child or the child's mother since the prior termination action in 2013; "Not one card. Not one text. Not one visit to the home. Not one letter to [the mother] requesting a visit." Despite his argument to the contrary, the father did not establish that he was effectively impeded from maintaining contact with the child by the mother or her husband. We find clear and convincing evidence supports termination under Iowa Code section 600A.8(3)(b).

### B. Best Interests.

The father contends termination is not in the child's best interests. The sum and substance of his argument is that the child "would be significantly better off if [the father] were allowed to gradually reintroduce himself into [the child's] life. She would then have the benefit of two loving fathers rather than one." In addressing the child's best interests, the juvenile court found:

> [The child] only knows one father, [the mother's husband]. [The mother's husband] did testify that he loves [the child] like his biological children. That he helps her with homework, financially supports her, emotionally supports her, and does all the things that good dads do. As a natural consequence, [the child] wants him to be her legal father. She wants to share a last name with the only family unit she has ever known . . . . The court is ever cognizant of the fact that she is a young child and her wishes are not dispositive. That being said, the court does not believe that it is in [the child's]

best interests to wait and see whether [the father's] promises are indeed, again, empty. Past actions are indicative of future behavior, and [the father] has given the court no reason to believe that he will ever make an attempt to parent [the child]. [The mother's husband] has evidenced a sincere desire to adopt [the child] and be the father that he already is to her.

We agree with the juvenile court's assessment that termination of the father's parental rights is in the best interests of the child.

### III. Conclusion.

Upon our de novo review, we find there is clear and convincing evidence to support the juvenile court's conclusion the father abandoned the child within the meaning of section 600A.8(3)(b) because he has not maintained "substantial and continuous or repeated contact with the child." Furthermore, termination of the father's parental rights is in the best interests of the child. Accordingly, we affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED.**