# IN THE COURT OF APPEALS OF IOWA

No. 19-0291
Filed December 18, 2019

**IN THE INTEREST OF S.S.,**
**Minor Child,**

**B.W., Mother,**
        Petitioner-Appellee,

**vs.**

**J.S., Father,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Kevin Parker,

District Associate Judge.


        A father appeals the termination of his parental rights to his minor child

under Iowa Code chapter 600A (2017). **AFFIRMED.**


        Bridget M. Bott of Bott Law Office, P.L.L.C., West Des Moines, for appellant.

        John H. Judisch of Stuyvesant, Benton & Judisch, Carlisle, for appellee.


        Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

J.S. appeals the termination of his parental rights to his minor child, S.S. He argues he did not abandon S.S. under Iowa Code section 600A.8(3)(b) (2017) and termination is not in S.S.'s best interests. On our review, we agree with the district court and affirm the termination of J.S.'s parental rights.

The father acknowledged he "had [a] criminal history prior to meeting" the child's mother, B.W., but he was not incarcerated when S.S. was born in March 2015. The father, mother, and S.S. lived with the paternal grandmother at this time. On April 27, the father tested positive for methamphetamine, which led to the revocation of his probation and incarceration at a federal prison in Missouri. The mother and child did not see him again until his release from prison on or about November 9. He resumed living with the paternal grandmother, the mother, and the child upon his release.

On or about March 30, 2016, the father was arrested for two counts of theft. He ultimately pleaded guilty to one count of theft in the second degree and was sentenced to a term of incarceration not to exceed five years.[1] After sentencing, the mother and child began visiting him in prison almost every other weekend. The father also called and sent letters to them during this time.

This pattern of contact continued until early June 2017 when these parents conversed about a "package" containing the drug K2 being sent to the mother. According to the mother, the father insinuated that she should smuggle the

---

[1] The father remained incarcerated at the time of the hearing. He testified he expected to be released on December 22, 2018, though his release date could be as late as October 7, 2021 if he remains incarcerated for the full five-year sentence.

package of drugs into prison during a visitation. According to the father, the mother participated in the planning. The mother acknowledged receiving the package, but she claimed she threw the package away before the visit at the prison. In any event, on June 23, the mother and child arrived at the prison to visit the father. Prison officials immediately stopped them, questioned the mother, and searched her vehicle for illegal substances. The mother testified the traumatic experience of the search caused her to suffer from post-traumatic stress disorder but that the child remained unaffected by the incident. Yet the mother admitted at the hearing she previously smuggled tobacco into prison during visitations. The father testified the prison sales of tobacco provided income to benefit the family.

After the June 23 incident, the prison prohibited the father from contacting the mother for thirty days, and from that point she voluntarily ended all visitation and communication with him. He tried to call, but she blocked his number. He also mailed letters and cards to both the mother and child, but she refused to share them with the child.

On September 20, the mother filed the petition to terminate the father's parental rights under Iowa Code chapter 600A. On August 17 and 31, 2018, the court held a hearing on the matter. On January 16, 2019, the court issued its order finding the father abandoned the child and termination was in the child's best interests. The father appeals.

We review chapter 600A termination proceedings de novo. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of

witnesses." *Id.* "The primary interest in termination proceedings is the best interests of the child." *Id.*

The petitioner must satisfy a two-step process to terminate parental rights under chapter 600A. *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018). First, the petitioner must "show by clear and convincing evidence a threshold event has occurred that opens the door for potential termination of parental rights." *Id.*; *see also* Iowa Code § 600A.8. "Once that threshold showing has been made, the petitioner next must show by clear and convincing evidence termination of parental rights is in the best interest of the child." *Q.G.*, 911 N.W.2d at 770.

**A. Threshold Events Showing Abandonment.** The district court found the mother established a threshold event by showing the father abandoned the child. Iowa Code section 600A.8(3)(b) establishes the criteria for showing abandonment of a child age six months or older:

> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

First, the father's complete failure to financially support this child supports termination. The mother argues this father chose a lifestyle of criminal behavior at

the expense of his relationship with their child. *See In re J.S.*, 470 N.W.2d 48, 51 (Iowa Ct. App. 1991) (finding incarceration was not a justification for father's failed responsibility). The father's incarceration does not excuse his unavailability to parent and financially support the child, and he must take responsibility for his actions leading to incarceration. *See In re J.L.W.*, 523 N.W.2d 622, 624 (Iowa Ct. App. 1994), *overruled on other grounds by Q.G.*, 911 N.W.2d at 771–74. While incarcerated for long periods of the child's life, there is no example of an effort to support the child by this father.

In the past, both parents relied on the paternal grandmother to provide the majority of financial assistance for the child's care.[2] We acknowledge that the father's income potential is limited in prison,[3] and there is no legal document establishing a support obligation. Yet, when this father returned home for four months before this recent imprisonment, he testified he worked "nowhere." His argument that his mother's financial help supported his son cannot save the day as we examine whether the *parent* contributes to the child's support "according to the parent's means." Iowa Code § 600A.8(3)(b). His excuses for failing to support the child by child support or other means ring insincere. *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) ("While [the mother] points out that the Texas dissolution decree did not obligate her to pay child support, section 600A.8(3)(b) is not limited to court-ordered support payments; those types of payments are the subject of a separate provision."). The father had an obligation

---

[2] For the first two years of the child's life, the paternal grandmother cared for and supported the child in some fashion on a daily basis.

[3] J.S. testified he is on a waiting list for employment through the prison system.

to financially support his child whether the court ordered it or not. The district court determined the father "has not provided any support for his son" and we agree.

Even if the support failures were not involved, the mother argues the father missed eighty-five percent of the child's upbringing because of his preference for drugs. According to the mother, the father's behavior shows he has not maintained "substantial and continuous or repeated contact." Iowa Code § 600A.8(3)(b). The parties agree that the mother and child visited the father in prison every other week for several months before the June 23, 2017 incident. The father supplemented this contact with phone calls, sometimes daily, and letters during this time. The mother acknowledged these contacts as significant between father and child. Likewise, during visits, the child ran directly to his father and called him "Dada." Unfortunately, the attempt to coordinate the smuggling of K2 into the prison during his visitation with the mother and child constituted a terrible lack of judgment by the father. As a result, the mother understandably ended all communication between the father and herself and the child. "A parent cannot prove abandonment when his or her own actions prevented the other parent from contacting the child." *In re K.P.*, No. 14-2068, 2015 WL 4644800, at *3 (Iowa Ct. App. Aug. 5, 2015); *see also* Iowa Code § 600A.8(3)(b)(1), (2). Nevertheless, the *father's* conduct ultimately stopped contact because he used the visit with his child to obtain drugs. We cannot blame the mother for exercising her judgment to discontinue visits.

We find the mother met her burden to show abandonment by clear and convincing evidence as defined by the statute.

**B. Best Interests of the Child.** Once we determine grounds for termination are established by clear and convincing evidence, we next answer the

question if termination is in the best interests of the child. *Q.G.*, 911 N.W.2d at 771. The father asserts termination of his parental rights is not in the child's best interests.

A parent concerned about the best interests of a child does not incorporate that child in a drug smuggling scheme. There is no question that the father has demons to conquer,[4] and chooses drugs over family. Unlike the situation in *In re Q.G.*, where an incarcerated father addressed his failures in prison, we see no evidence of attempts to improve parenting for this father. *See Q.G.*, 911 N.W.2d at 770. Other than living with and being supported by his mother, this father demonstrates no ability to provide a safe and secure environment for his child. His past performance indicates this child is not his priority. It is not fair to force a child to endlessly await the maturity of their parent. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). By all accounts the child is thriving in the mother's care. The overwhelming evidence supports termination of father's parental rights to preserve stability for the child.

**AFFIRMED.**

---

[4] Pre-incarceration, the father's issues centered on his substance abuse, criminal propensities, and inability to maintain employment. We have recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children. *See, e.g.*, *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012); *In re J.K.*, 495 N.W.2d 108, 112–13 (Iowa 1993).