# IN THE COURT OF APPEALS OF IOWA

No. 16-1936
Filed June 7, 2017

**IN THE INTEREST OF M.K.R.,**
**Minor Child,**

**K.R., Mother,**
    Petitioner-Appellant,

**B.Y., Father,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, Jennifer S. Bailey, District Associate Judge.

The mother appeals the district court's order denying her petition under Iowa Code section 600A.8(3) (2016) to terminate the father's parental rights to their minor child and the court's admission of an affidavit during the trial. **AFFIRMED**.

Diana L. Miller and Sarah S. James of Whitfield & Eddy, P.L.C., Mt. Pleasant, for appellant mother.

B.Y., pro se appellee father.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

The mother appeals the district court's ruling denying her request to terminate the father's parental rights of M.R. on the basis (1) statutory grounds to establish termination were met, and (2) termination is in M.R.'s best interests. The mother initiated this action under Iowa Code section 600A.8(3) (2016) in April 2016. The mother also claimed the district court erred in admitting the affidavit of her paramour. Although the statutory grounds for termination were met, termination is not in the best interests of M.R. The district court also properly admitted the affidavit. We affirm.

**I. Background Facts and Proceedings.**

The parties to this private-termination action are the natural mother and father of M.R., born in 2009. The parties were never married, and they separated in 2008 before M.R.'s birth. M.R. has resided with the mother since birth and currently lives with the mother and her paramour, Samuel. M.R. knows Samuel as her father. Both the mother and father have other children unrelated to this action.

Sometime in 2008, both the mother and the father were charged with theft. According to testimony, both parties received a deferred judgment. However, the father testified he was incarcerated for seven days for contempt related to failing to pay restitution for the theft. The record does not show any additional criminal activity.

The father has never had meaningful contact with M.R., nor has he provided any economic contributions. Despite the father's limited contact with M.R., he has attempted to communicate with the mother and her family about

M.R. since the child's birth. On or around the mother's due date for M.R., the father testified he called the mother to inquire about the pregnancy, but the mother told the father M.R. was not yet born even though the father could hear a baby crying in the background. Between 2010 and 2011, the father sent multiple letters to the mother's family requesting to meet M.R.; the letters were returned with the inscription, "Do not send mail here." The father testified he sent the letters to the mother's family because he did not know her location. In 2013, the father initiated communications with the mother through Facebook about establishing a relationship with M.R. In 2014, the father again attempted to communicate with the mother through Facebook asking the mother to let M.R. meet her paternal grandfather, as his health was fading. He made multiple requests in 2014 and another request between 2015 and the trial date to see M.R. The mother's testimony indicates that she saw the messages. However, all of the messages went unanswered. The father even attempted to contact Samuel in 2015 through Facebook.

In April 2016, the mother filed a petition to terminate the father's parental rights, pursuant to Iowa Code section 600A.8(3). At trial, the father offered Samuel's affidavit from a custody proceeding between Samuel and the mother regarding their minor child. The relevant part of the affidavit states:

> [M.R.] doesn't know her own father and he has not been allowed into her life. It is my understating that he has made attempts to be involved in her life, but [the mother] won't allow him to do it. I fear that she is now doing that with me to alienate me from my daughter's life.

The district court initially denied the father's request to admit the affidavit, noting the father could call Samuel as a witness during his case-in-chief to elicit the

information stated in the affidavit—at that time, Samuel was present in the courtroom. By the time the father attempted to call Samuel as a witness, he was unable to locate him.[1] The district court admitted the affidavit over the mother's objections for "what value may be evinced from the actual paragraph on page 3 [listed above]. The rest of the document will be admitted to simply show who signed it and under what circumstances."

In the guardian ad litem's (GAL) report to the court, the GAL requested "to reserve recommendation until she has heard the information which comes before the court in the form of testimony and admitted evidence." The GAL made its oral recommendation to the court during the trial. She stated:

> This minor child is well into growing. She is in second grade now. She has been without [the father], and he has made no attempts to provide support for her. I find that very concerning. It starts to make me question as to whether or not—other than on the rare occasions he'd make contact by Facebook—if she was a priority. He tells me that she was, but it doesn't appear to be that way.
> And so for those reasons, Your Honor, I don't know that I would find it to be in the child's best interest to suddenly develop and extend on to allow for him to go further and not establishing custody. He's not done anything at this point that shows that he's going to. And I think at this point [M.R.] receives everything from her mother and [Samuel], and I don't think it's in her best interest to allow for this to continue. And I don't see anything that shows that it's not in her best interest to have his rights terminated.

The GAL further stated she has "absolutely no concerns for [M.R.'s] care" under the mother and Samuel, and "[M.R.] did not appear to have any interest in meeting [the father]."

On October 24, the court denied the mother's petition to terminate the father's parental rights. The mother appeals.

---

[1] Samuel was not under subpoena, nor was he noticed as a witness during discovery.

**II. Standard of Review.**

We conduct a de novo review of termination proceedings under chapter 600A. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We defer to the factual findings of the district court, especially witness-credibility findings, but we are not bound by them. *See In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). The termination findings must be based on clear and convincing proof. Iowa Code § 600A.8.

**III. Discussion.**

The mother argues the father abandoned the child under Iowa Code section 600A.8(3). She also argues termination is in M.R.'s best interests and the district court erred in admitting Samuel's affidavit.[2]

**a. Termination of Parental Rights.**

In a private termination-of-parental-rights proceeding, the petitioner must establish by clear and convincing evidence that a statutory ground for termination exists. *See* Iowa Code § 600A.8; *In re B.L.A.*, 357 N.W.2d 20, 22 (Iowa 1984). If a ground is proved, the petitioner must also establish termination is in the child's best interests. *See In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010). Although the interests of the parents must be given due consideration, our primary concern is the child's best interests. *See* Iowa Code § 600A.1 ("The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting this chapter."); *A.H.B.*, 791 N.W.2d at 690–91. Thus, we conduct a two-step analysis in our review. First, we determine whether

---

[2] The father did not file a brief in this appeal.

the statutory requirements are established. Second, we review whether termination is in the best interests of the child.

**1. Statutory Requirements.** The district court held the father did not abandon the child under section 600A.8(3) because "[c]lear and convincing evidence has not been presented to [the district court] that constitutes grounds for the termination of the parental rights of [the father] to the child in interest."[3] The mother argues the father's failure to provide any support, emotionally or financially, to M.R. satisfies the requirements under section 600A.8(3).

Abandonment of a minor child is one of the grounds authorizing the termination of parental rights under Iowa Code chapter 600A. *See* Iowa Code § 600A.8(3). The relevant code section provides that a parent of a child six months old or older will be deemed to have not abandoned the child if that parent maintains:

> substantial and continuous or repeated contact with the child *as demonstrated by contribution toward support of the child of a reasonable amount*, according to the parent's means, and as demonstrated by any of the following:
>     (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>     (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>     (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of

---

[3] We note a paragraph in the district court's decision states, "In addition to the determination that *the statutory grounds for termination have been met*, the Court must determine that the termination would benefit the children" (emphasis added), which could lead to the conclusion that the court found the statutory grounds for termination were satisfied under section 600A.8(3). However, we believe this statement is in error because the order ultimately "denied [the mother's request] upon the grounds set forth in Iowa Code section 600A.8(3)." Regardless, this discrepancy does not affect our de novo review of the issue.

> parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* (emphasis added). The petitioner need not establish the father's subjective intent to abandon the child. *See id.* § 600A.8(3)(c); *G.A.*, 826 N.W.2d at 130 (recognizing a parent's subjective intent does not preclude a finding of abandonment); *see also In re C.J.F.M.*, No. 10-0166, 2010 WL 3157756, at *2 (Iowa Ct. App. Aug. 11, 2010) (recognizing the "'intention to abandon' is no longer a statutory element in the definitions of Iowa Code chapter 600A"). Nor is the petitioner required to show they or anyone else made diligent efforts to encourage the father to perform the acts specified in section 600A.8(3)(b). *See* Iowa Code § 600A.8(3)(c). Rather, abandonment is determined by a parent's actions or lack thereof. *See In re J.L.W.*, 523 N.W.2d 622, 624 (Iowa Ct. App. 1994) ("Clearly, actions speak louder than words. Intent can be shown through conduct."). Section 600A.2(19) defines abandonment of a minor child as "reject[ing] the duties imposed by the parent-child relationship . . . , which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child."

Here, the father has not paid any financial support to M.R., and he has only made a marginal effort to do so. While he did state through a Facebook message, "I don't have a problem paying child support," he failed to set up a custody arrangement, child-support payments, or make any other reasonable financial contribution to M.R. Under section 600A.8(3), "the threshold element of 'substantial and continuous or repeated contact' is economic contributions." *In re*

*K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015); *see also In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) (discussing "predicate language of section 600A.8(3)(b)"). The father's lack of any economic contribution supports the statutory requirement the parent abandoned the child. *Compare J.L.W.*, 523 N.W.2d at 625 (holding father's court-ordered ten-dollar-per-month child-support payment was insufficient to qualify as a reasonable contribution to the support of the child), *with In re J.J.*, No. 08-2026, 2009 WL 1492860, at *3 (Iowa Ct. App. May 29, 2009) (holding although father's child-support arrearage was $12,392, father did not abandon child where he paid approximately forty-five percent of the arrearage and continued to call and write to the child). We note the district court found, "[The father] has been prevented from seeing [M.R.] since the day of her birth. He has expressed significant interest in her welfare by staying in contact with [the mother], at least beginning in 2013." Because we hold the father abandoned the child under section 600A.8(3) by not making any reasonable support contributions, we need not address the mother's preventative measures under the statutory analysis. These facts, however, are relevant in our best-interests analysis, which will be developed in more detail below.

2. ***Best Interests.*** Next, we consider whether the termination of the father's parental rights is in the child's best interests. *See J.L.W.*, 523 N.W.2d at 625 ("Once we determine a ground for termination under 600A.8 has been established by clear and convincing evidence, we must next determine whether it is in the child's best interests to order termination of parental rights."). In determining the best interests of M.R., the district court held:

> [T]he court must look at both [M.R.'s] long-range and short-term interest in maintaining her biological father's parental rights. Despite [the father's] complete lack of financial support and his checkered criminal history, the court cannot say that it would be in [M.R.'s] best interests to never know her biological father, or never avail herself of the emotional and financial support he could, and can, provide her.

The mother argues the district court erred in its best-interests determination because the father failed to affirmatively assume the duties of being a parent, including fulfilling financial obligations, demonstrating interest in M.R., maintaining communication with M.R., and establishing a place of importance in the child's life.

In determining a child's best interest, the child's long-range and immediate interests are considered. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). Insight for this determination can be found from evidence of the parent's past performance, as it may be indicative of the quality of the future care a parent is capable of giving. *Id.* Additionally, we give "due consideration" to the father's interests. *See* Iowa Code § 600A.1. We also note, "[t]here exists a parental right to integrity of the familial relationship, unless by conduct it be forfeited." *In re Lewis*, 257 N.W.2d 505, 510 (Iowa 1977)

The mother points to *In re M.B.W.*, No. 12-2161, 2013 WL 3273170 (Iowa Ct. App. June 26, 2013), and *In re J.K.N.*, No. 08-2069, 2009 WL 1677000 (Iowa Ct. App. June 17, 2009), to support her argument that termination is in the best interests of M.R. The present facts, however, are distinguishable from the above cases. In *M.B.W.*, the court concluded termination was in the child's best interests because the father had not addressed his mental-health or substance-abuse issues. *M.B.W.*, 2013 WL 3273170, at *3. The appellant's criminal history

in *M.B.W.* was more extensive than the present case. Here, the father was incarcerated for seven days for a contempt action related to a theft. In *M.B.W.*, the court found the father's violent tendencies, gang affiliations, and association with individuals having criminal backgrounds prevented the father from establishing a bond with his child. *Id.* at *2. Notably, the father in *M.B.W* was found to not have an interest in the parent-child relationship. *Id.* Here, the father has shown a repeated interest in the child's well-being since birth, and his criminal history is minimal.

Similarly, in *J.K.N.*, the father admittedly did not have any interest in maintaining a bond with the child. 2009 WL 1677000, at *1. He stated to the mother that he did not want anything do with the child, and he signed a "release of custody and consent to termination of parental rights" form. *Id.* Although the district court denied termination, the only reason it did so was the speculative benefit of future income from the father; a panel of our court reversed the district court's decision. *Id.* at *5–6. In both *M.B.W* and *J.K.N.*, a panel of our court held termination was in the child's best interests because of the father's lack of involvement with the child, the harm caused by the father, and the limited benefit in retaining the parent-child relationship. *See id.*; *M.B.W.*, 2013 WL 3273170, at *3. Furthermore, the mother in the above cases did not prevent the father from developing a meaningful relationship with the child. The rationale in *M.B.W.* and *J.K.N.* are not applicable to this case.

Unlike the above cases, here the father has shown an interest in parenting by contacting the mother since M.R.'s birth. In response, the mother, at best, ignored his requests. Moreover, the record illustrates limited harm to M.R. in

maintaining the parent-child relationship with the father. The criminal activity that led to the father's incarceration in 2010 has subsided, and the father has gained steady employment. There is also no record of mental-health or substance-abuse issues. *Cf. In re A.P.*, No. 07-1966, 2008 WL 782814, at *3 (Iowa Ct. App. Mar. 26, 2008) ("[T]he benefit of preserving the parent-child relationship between F.H. and A.P. II is clearly outweighed by the continuing risk of harm posed by F.H.'s unresolved substance abuse issues."). The father should not be denied a relationship with his biological child when he has not had a legitimate opportunity to develop one, and the father's conduct does not suggest the child will be harmed in maintaining or developing such a relationship. *See Lewis*, 257 N.W.2d at 510 ("There exists a parental right to integrity of the familial relationship, unless by conduct it be forfeited."). We agree with the district court that termination is not in M.R.'s best interests.

### b. Evidentiary Issues.

The mother next contends the district court erred in the admission of an affidavit of Samuel in an unrelated child-custody proceeding. The affidavit suggests Samuel is worried about the custody of his children because the mother denied M.R.'s father any chance to see his children. The mother objected to the affidavit on grounds it was not produced in discovery, it is not relevant, and it is not subject to cross-examination.

In equity cases, evidence that is objected to should be admitted subject to the objection. *In re Estate of Evjen*, 448 N.W.2d 23, 24 (Iowa 1989); *accord In re E.J.R.*, 400 N.W.2d 531, 532–33 (Iowa 1987) (holding hearsay evidence is admissible in a termination-of-parental-rights hearing). Evidence that is typically

excluded under the rules of evidence in a trial at law is admissible here, and the nature of the evidence is considered for its probative value rather than its admissibility. *In re H.R.K.*, 433 N.W.2d 46, 48–49 (Iowa Ct. App. 1988) (citing *Harter v. State*, 149 N.W.2d 827, 829 (Iowa 1967)). Here, the district court stated:

> [The affidavit] will be admitted. For purposes of the relevancy of this proceeding, the Court will only consider, again, for what value it may be evinced from the actual paragraph on page three. The rest of the document will be admitted to simply show who signed it and under what circumstance.

The district court properly admitted the evidence for the limited purpose of the statement by Samuel in paragraph three, which was probative of the mother's actions that prevented the father from developing a relationship with M.R.

Although the statutory grounds for termination were met, termination is not in the best interests of M.R. The district court also properly admitted Samuel's affidavit.

**AFFIRMED.**