In the Interest of B.L.A. and R.D.A.,
Minor Children.

B.A., Appellant,

v.

R.B., Appellee.

No. 83–1390.

Supreme Court of Iowa.

Oct. 17, 1984.

Beth H. Trout of Mowry, Irvine, Brooks & Ward, Marshalltown, for appellant.

Barry S. Kaplan of Fairall, Fairall, Kaplan & Condon, Marshalltown, for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

The principal issue in this appeal is whether the trial court erred in terminating the parent-child relationship between the divorced and non-custodial father and his two sons for failure to pay adequate child support without good cause. The action was initiated by appellant's ex-wife R.B., the natural mother and custodian of the children under the terms of the dissolution decree, as a prelude to the adoption of the children by R.B.'s present husband. The Marshall County Juvenile Court terminated the parent-child relationship on the grounds that B.A., the natural father and appellant, failed to provide adequate child support without good cause and abandoned the children. A three-member panel of the court of appeals, with one member dissenting, reversed the juvenile court order terminating the father's parental rights, and we granted further review. We vacate the decision of the court of appeals and affirm the order of the juvenile court.

In applicable part Iowa Code section 600A.8 (1983) provides:

The juvenile court shall base its findings and order [terminating parental rights] ... on clear and convincing proof. The following shall be, either separately or jointly, grounds for ordering termination of parental rights:

....

(3) A parent has abandoned the child.

(4) A parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause.

On appeal the father asserts there was insufficient evidence to prove either of the alleged grounds by the clear and convincing standard required in a termination proceeding. Although the juvenile court relied on both abandonment and failure to provide support without good cause as grounds for the termination, we confine our examination to subsection 4 with its provision concerning support and will discuss abandonment only as it applies to the support issue.

██ We have indicated that the language in section 600A.8 imposes a duty on the trial court to recognize a ground for termination if it is established by the evidence. *Klobnock v. Abbott,* 303 N.W.2d 149, 152 (Iowa 1981). In *Klobnock* we specifically applied this duty to recognize the ground of failure to support as defined in subsection 4 stating:

A parent has a basic obligation to support a minor child. The legislature has determined that it is in the best interests of a child to terminate a parent-child relationship if the parent refuses to support the child. Although abandonment is a separate ground for termination, section 600A.8(3), we conclude that the legislature intended termination for nonsupport to occur where a parent's failure to pay manifests indifference to a child and is therefore akin to abandonment. "[A]bnegation of court-ordered financial responsibility to a child [is] the equivalent of abandonment. A parent who unjustifiably refuses to meet a support obligation manifests complete indifference to his child." [*In re Kelley,* 262 N.W.2d 781, 785 (Iowa 1978)]. A substantial, and not merely sporadic or insignificant, failure to pay ordered support without good cause justifies termination of parental rights under section 600A.8(4). So interpreted, our statute is similar to other states' statutes allowing termination, or dispensing with a requirement of consent to adoption, for failure to support a child for a specific time period.

*Id.* (citations omitted). After finding substantial failure to pay ordered support, a court must consider whether that failure was without good cause. *Id.;* Iowa Code § 600A.8(4) (1983).

Our review of this termination action is de novo, and if one of the grounds for termination is established by clear and convincing evidence, the termination will be upheld. *In re Voeltz*, 271 N.W.2d 719, 723 (Iowa 1978); *Kelley*, 262 N.W.2d at 782–85. In equity cases, especially when considering the credibility of the witnesses, this court gives weight to the factfindings of the trial court, but is not bound by them. Iowa R.App.P. 14(f)(7). With the guidance of these principles, we find the following facts.

The parents of the involved children were married on November 1, 1975. The marriage was dissolved by the Iowa District Court for Clarke County by a default decree dated August 22, 1978, in response to the mother's petition. The decree granted custody of the two children, who were born on January 4, 1975, and June 17, 1977, to the mother and liberal visitation rights to the father. The court further ordered the father to pay child support in the amount of $100 per month per child commencing September 1, 1978, until each child reached the age of 18.

The mother and children moved from Clarke County to Marshalltown one month after the dissolution. The mother stated that she was subjected to physical violence during the marriage and that there had been animosity concerning visitation since the dissolution. The mother was employed prior to her move and has been employed since that time. She found it necessary, however, to supplement her income with governmental assistance commonly known as ADC, for a three-year period after the dissolution.

The father asserts that his failure to meet his child support obligation was not without good cause, attributing his poor record of payment to his inability to find regular employment and his meager income. We list the father's estimation of his income since the dissolution in 1978 (adopting a high figure when there was a variance in his opinion) and the accrued and paid child support to the date of the hearing as follows:

| Year | Income | Accrued Liability | Payments |
|------|--------|-------------------|----------|
| 1978 | $ 0 | $ 800 | $ 0 |
| 1979 | 5,000 | 2,400 | 1,300 |
| 1980 | 7,000 | 2,400 | 1,175 |
| 1981 | 1,000 | 2,400 | 616 |
| 1982 | 2,000 | 2,400 | 0 |
| 1983 | 700 | 1,600 | 10 |
| Totals | $15,700 | $12,000 | $3,101 |

The father was $8899 in arrears on the date of the hearing.

Thus, the key factual issue in this appeal concerns the father's ability to pay the ordered child support. He is in good health. He has several skills in the contracting field. During the marriage he was employed as a plumber; he quit his job shortly before the dissolution. Apparently, he was unemployed until he was haled into court for contempt by the welfare authorities in 1979. He secured employment with his former employer in response to this threat; however, he still was sentenced to jail for 30 days for intentionally failing to pay support and served 26 days. In 1980 he was fired from this plumbing job because of a disagreement with his employer. Since that time he has worked on a part-time basis pouring concrete and has been paid in cash by his employer.

In our de novo review, we are troubled by the credibility of the father's testimony concerning the extent of his employment and his actual cash income. The juvenile court was less concerned with credibility, finding that the father did not make a good effort to support his children. In part the juvenile court found:

> [T]he facts established by clear and convincing evidence by the Petitioner (mother) in the instant case justify termination of Respondent [sic] (father's) parental rights on both grounds asserted by Petitioner. The record is clear that Respondent has not seriously undertaken the support of either of the two children in this case since before the dissolution of marriage was finalized. In fact, Respondent's voluntary termination of his employment one week prior to finalization of the dissolution is more indicative

of a man who deliberately set out to avoid his support obligation, than a man who considered the best interests of his children before his own interests. Respondent's performance since the dissolution reinforces the Court's belief, in that the record is clear that the only time the Respondent has consistently paid any support for his two children is when he himself was threatened with incarceration for contempt of court. At that juncture he miraculously found employment and began to pay his support obligation; however, even the threat of incarceration has not been sufficient to induce him to support his children since 1981.

■ The court of appeals found that the father's failure to keep up these payments was for good cause, distinguishing this case from those in which the parent in arrears had an adequate income to pay the required amount. We cannot share this latter view. We agree with the appraisal of the juvenile court that the father has deliberately set out to avoid his support obligation.

The father admitted that he has depended upon his mother and his girlfriend for his housing, food and entertainment. He has lived with a girlfriend who works and has a good income. When his girlfriend was at work, he has eaten many of his meals with his mother. He has been able to secure enough part-time work to keep gasoline in his girlfriend's pick-up for his own transportation and to pay for part of his Friday night social life in bars. We are sure that he has not overestimated the $200 a year he testified he spends in bars. He admitted that he has not sought employment outside Clarke County and attempted to portray the pick-up as incapable of making forty to fifty-mile trips to Indianola or Des Moines. We find that his earning capacity either has been underestimated or has been reduced by a deliberate attempt to keep his income minimal to avoid child support. The father has not established good cause within section 600A.8(4) for his appalling payment record;

we find he has substantially failed to pay support without good cause.

■ In addition to the determination that the statutory grounds for termination have been met, we must determine that the termination would benefit the children. We stated in *Klobnock:* "Section 600A.1 provides that the welfare of the child shall be the paramount consideration in interpreting chapter 600A." 303 N.W.2d at 153. Consequently, the issue of whether the interest of the children will be best served by the termination of their father's parental rights must be resolved.

We find no close relationship between the father and the two children. Although the oldest child remembers his father, visitation in this case has been sparse. We believe the juvenile court correctly analyzed the fact situation in the following finding of fact:

Likewise, the Respondent has failed to manifest any attempt to "affirmatively parent" either of his two sons. Rather, the Respondent has been content to sit back and allow his mother to arrange visits with his children on the average of twice a year. Based upon the testimony at hearing it appears that the Respondent, even during these bi-yearly visits, doesn't assume any of the basic responsibilities for caring for two young children. His mother apparently provides for their food, shelter, and basic care needs during their visits in Clark [sic] County. In this Court's opinion it is in the children's best interest that termination of Respondent's parental rights occur.

■ On the other hand, the mother has entered into a new marriage. Her husband is gainfully employed, is supporting the two children involved, and professes love and affection for the children. The juvenile court, which had an opportunity to observe the witnesses, indicated that the mother and her new husband have established a relatively stable, happy home life. Although the marriage has not been of long standing, the new husband participates with the children in their school and play activities and has assumed all the re-

sponsibilities of the children. He plans to adopt the children if the termination occurs. We find it has been established by clear and convincing evidence that the welfare of the children would be served best by the termination of the father's parental rights in order that adoption proceedings might be initiated.

In summary, we agree with the juvenile court and the court of appeals dissenter that the father's failure to support his children without good cause was established by clear and convincing evidence and that the best interests of the children require that their father's parental rights be terminated.

DECISION OF THE COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.