# IN THE COURT OF APPEALS OF IOWA

No. 22-0425
Filed December 21, 2022

**IN THE INTEREST OF M.M. and A.G.,**
**Minor Children,**

**J.L., Mother,**
    Petitioner-Appellee,

**C.M., Father,**
    Respondent-Appellant.
_____


    Appeal from the Iowa District Court for Worth County, Adam D. Sauer,

District Associate Judge.


    A father appeals the Iowa Code chapter 600A (2022) termination of his

parental rights to two children.  **AFFIRMED.**


    Richard N. Tompkins Jr., Mason City, for appellant.

    Sarah A. Reindl of Reindl Law Firm P.L.C., Mason City, for appellee.

    Barbara Jo Westphal, Belmond, attorney and guardian ad litem for minor

children.


    Considered by Bower, C.J., Tabor, J., and Blane, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**TABOR, Judge.**

A father, Christopher, appeals the juvenile court's order terminating his parental rights to his two sons. First, Christopher argues their mother, Joy, did not present clear and convincing evidence that he abandoned them within the meaning of Iowa Code sections 600A.2(20) and 600A.8(3)(b) (2022). Second, he contends termination was not in the boys' best interests. Third, he faults the juvenile court for not holding Joy "accountable" under parenting guidelines issued by the state of South Dakota, where she used to live with the children.

Like the juvenile court, we find Joy met her burden of proof on both abandonment and best interests. As for the South Dakota parenting guidelines, they were not binding on the juvenile court. After our independent assessment of the record, we affirm the termination order.[1]

**I.      Facts and Prior Proceedings**

Christopher and Joy have two children in common, M.M. born in October 2015 and A.G. born in November 2016. The parents were never married to each other. But they briefly lived together, starting when M.M. was six months old and ending when he was ten months old. Aside from those four months, Christopher has not lived with the children.

---

[1] Our review is de novo. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We defer to the juvenile court's factual findings, particularly those on witness credibility, but those findings do not bind us. *In re R.K.B.,* 572 N.W.2d 600, 601 (Iowa 1998). Our primary concern is the best interests of the children, though we give "due consideration" to the interests of the parents. Iowa Code § 600A.1; *G.A.*, 826 N.W.2d at 127.

According to a timeline compiled by Joy, she and Christopher broke up in September 2016, two months before A.G. was born.[2] The next month, she obtained a South Dakota protection order that prohibited Christopher from having contact with her until October 2017.[3] In February 2017, she moved to Minnesota. A year later, she moved to Iowa.

Christopher stayed in South Dakota. He did not pay child support from November 2017 until March 2019.[4] Christopher was arrested for drug offenses in December 2018 and again in August 2019. He received a suspended sentence for possession of methamphetamine in September 2019. As for contact with the children, his last in-person visit with A.G. was in December 2018, and the last in-person visit with M.M. was in January 2019. He last video-chatted with the boys in July 2019.

Joy petitioned to terminate Christopher's rights in November 2021. The court held a hearing in February 2022. Both parents testified, as did Joy's new husband. After hearing the evidence, the court granted Joy's petition under section 600A.8(3)(b).[5] Christopher now appeals.

## II.    Analysis

Iowa Code chapter 600A governs petitions filed by one parent to terminate the rights of the other parent, so-called "private" terminations. *In re B.H.A.*, 938 N.W.2d 227, 232 (2020). The petitioner, Joy, has a two-pronged burden. *See id.*

---

[2] At the termination hearing, Christopher did not contest the timeline.
[3] While the protection order was in place, Joy arranged for Christopher to have visitation with the boys through his mother.
[4] As of February 2022, Christopher owed over $16,000 in back child support.
[5] The court found Joy did not prove the child-support ground for termination at Iowa Code section 600A.8(4).

First, she must prove by clear and convincing evidence that Christopher abandoned M.M. and A.G. *See* Iowa Code § 600A.8(3)(b). Second, Joy must show termination is in the children's best interests. *See id.* § 600A.1; *B.H.A.*, 938 N.W.2d at 232. Christopher challenges both prongs.

*Abandonment.* Addressing the first prong, the juvenile court decided that Joy proved that Christopher abandoned their sons. "To abandon a minor child" means the parent "rejects the duties imposed by the parent-child relationship, . . . while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(20). When, as here, the children are older than six months, the legislature considers a parent to have abandoned them

> unless the parent maintains substantial and continuous or repeated contact with the child[ren] as demonstrated by contribution toward support of the child[ren] of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child[ren] at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child[ren].
> (2) Regular communication with the child[ren] or with the person having the care or custody of the child[ren], when physically and financially unable to visit the child[ren] or when prevented from visiting the child by the person having lawful custody of the child[ren].
> (3) Openly living with the child[ren] for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child[ren].

*Id.* § 600A.8(3)(b).

Christopher does not claim that he maintained substantial or continuous contact with M.M. and A.G. But he contends the juvenile court should have denied Joy's petition because she thwarted his efforts to keep in touch with the children.

As examples of obstruction, Christopher notes that Joy "blocked him on Facebook" and "did not give him their address in Iowa."

The record does not support Christopher's contention. Joy did not prevent him from visiting or having regular communication with the children. He was able to contact them through a Facebook account he set up for M.M., by phone, or through text. And Joy testified that she kept Christopher informed of their location each time she moved. The only time that she declined to provide the children's address is when Joy was living at her sister's residence in Minnesota and the protection order was in place. Steps taken by Joy to limit her own contact with Christopher did not contribute to Christopher's failure to visit with his children or otherwise communicate with them for more than two years. *See G.A.*, 826 N.W.2d at 130. Like the juvenile court, we find Joy proved the abandonment ground for termination.

> *Best Interests*. To measure best interests, we use this statutory definition:
>
> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Iowa Code § 600A.1. We also appropriate the framework from chapter 232 for terminations involving the Iowa Department of Health and Human Services. *B.H.A.*, 938 N.W.2d at 232. That framework directs us to give "primary consideration" to the children's safety and the best placement to further their long-term nurturing and growth. *Id.* (citing Iowa Code section 232.116(2)). We also

consider the children's emotional and psychological health, and the closeness of the parent-child bond. *Id.* (citing Iowa Code section 232.116(3)(c)).

In contending termination of his rights was not in the boys' best interests, Christopher notes that he had "been keeping up with his child support for the last two years." He also points to his contact with M.M. on Facebook. Reflecting on his efforts at self-improvement, Christopher asserts he has "turned his life around by being a successful graduate of Drug Court in South Dakota and continuing with an AA aftercare program."

We appreciate the strides that Christopher has made in addressing his drug dependency. But he has scarcely embraced "the duties encompassed by the role of being a parent." True, he has recently met his child support obligations. But he has not made a sincere effort to contact the children or to create and maintain a place of importance in their lives. The record does not show an ongoing bond between Christopher and his sons. As their guardian ad litem (GAL) observed: "They have no connection to him. They do not know him." The interests of M.M. and A.G. will be best served by the termination of Christopher's parental rights. *See In re B.L.A.*, 357 N.W.2d 20, 23 (Iowa 1984).

*South Dakota Parenting Guidelines.* As his last argument, Christopher criticizes the juvenile court for "ignoring the mandates of South Dakota law requiring the mother to keep the father in the lives of his children." He relies on a ten-page exhibit entitled "South Dakota Parenting Guidelines" offered into evidence at the termination hearing. *See* S.D. Codified Laws § 25–4A (Appendix

A) (2022).[6] Under cross examination by Christopher's counsel, Joy acknowledged being advised to follow those guidelines in the child support order entered in South Dakota. Counsel then read extensively from the guidelines on issues such as fostering communication with the other parent and asked if Joy had followed them. Joy replied that she believed she did. In closing argument, Christopher's counsel argued that the guidelines "lay it on both parties" to ensure the children have "frequent and meaningful contact with both parents." *See id.* (Introduction). The GAL responded,

> I understand his argument that the South Dakota Guidelines put requirements on both parents. However, that is not a Court Order that the mother was required to follow. And beyond that, I think it's very clear that the father has not followed that guideline. He's taken no steps to notify the mother or the children specifically of ongoing changes in his life.

Like the GAL, we do not believe that Joy had a duty to follow these guidelines. Neither at trial nor on appeal does Christopher analyze a choice-of-law question. His introduction of the guidelines as an exhibit was insufficient to prove they were enforceable in this situation.[7] "Under these circumstances, we must apply Iowa

---

[6] Under South Dakota domestic relations law, these guidelines apply to "all custody situations," including divorces with minor children and paternity actions. *See* S.D. Codified Laws § 25–4A APP A Guidelines (Scope of Application). But they do not apply to "situations where the court reasonably believes the children's physical health or safety is in danger or the children's emotional development could be significantly impaired. *Id.* These situations may include family violence, substance abuse or a "long interruption of contact between parent and children." *Id.*

[7] Further, for the guidelines to be enforceable, the parents must be "unable to agree on a parenting plan." S.D. Codified Laws § 25–4A APP A Guidelines (Enforcement). The guidelines are not intended to prevent an agreed-upon parenting schedule that is reasonable and in the child's best interests. *Id.* Christopher fails to show that he and Joy were unable to agree on a parenting plan. Thus, even if the guidelines applied to the Iowa proceedings, they would not be enforceable.

law to resolve the dispute before us." *Pennsylvania Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 811 (Iowa 2002).  Under Iowa law, termination was proper.

**AFFIRMED.**