**IN THE COURT OF APPEALS OF IOWA**

No. 23-0007
Filed November 8, 2023

**IN THE INTEREST OF L.D.,**
**Minor Child,**

**S.F., Mother,**
    Petitioner-Appellee,

**S.D., Father,**
    Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.


        A father appeals the private termination of his parental rights. **AFFIRMED.**


        Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant father.

        Gary E. Hill and Hannah T. Hirl of Family Law Solutions of Iowa LLC, Des Moines, for appellee mother.

        Penny B. Reimer of Reimer Mediation & Law, PLLC, Cumming, attorney and guardian ad litem for minor child.


        Considered by Bower, C.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A father appeals from the termination of his parental rights to his daughter.[1] The daughter's mother petitioned for termination under Iowa Code chapter 600A when he sought to reestablish a relationship with his daughter after eight years without any direct contact. He now argues the mother failed to prove a statutory ground for termination or that termination is in the best interests of the child. While we join the district court in commending the father for his admirable efforts to turn his life around, that does not affect the proper result here. The mother proved a ground for termination—that the father abandoned the child as defined by Iowa Code section 600A.8(3)—and termination of his parental rights is in the child's best interests. We thus affirm.

I.

The daughter was born in 2011 while her father was in prison. He eventually returned home and lived with his daughter and her mother for most of the daughter's first three years of life—when not in prison or jail. Throughout their time together, the father was physically and emotionally abusive to the mother. And then in May 2014, the mother applied for—and after a hearing, the district court issued—a civil domestic-abuse protective order against the father. She did so after an incident when the father strangled and punched her in front of their daughter— and she had to lock herself and their daughter in her bedroom to protect themselves. This was the last time the father saw or talked to his daughter.

---

[1] We avoid the use of names to respect the parties' privacy because this opinion— unlike the district court's order—is public. *Compare* Iowa Code § 600.16A (2022) *with* Iowa Code §§ 602.4301(2), 602.5110.

The father spent much of the rest of his daughter's life incarcerated—though the record is unclear on the precise frequency and duration of the incarceration. He also continued to abuse alcohol up to his last conviction of operating while intoxicated in March 2020 in Minnesota. Since 2014, the father has not provided any financial support for his daughter.

The father made a handful of attempts to contact his daughter in writing. But none of his letters or cards reached her. He also sent one Facebook message to the mother in 2016, but the mother did not reply. And he may have sent one gift through the prison's Angel Tree program in 2015. Yet he never called to speak with his daughter or her mother or tried to visit in person when he was not incarcerated—even though the mother and daughter had not moved from the same home in which they had all lived.

Upon his most recent release in April 2022, the father reached out by Facebook again asking to reestablish contact with his daughter. The mother replied that his daughter did not "want anything to do with" him. He then sought custody and visitation rights for his daughter. But even so, he has still not offered any financial support. In response, the mother petitioned for termination of his parental rights. She sought to terminate the father's parental rights on the ground of abandonment under Iowa Code section 600A.8(3).

After a bench trial in November 2022, the district court terminated the father's parental rights. The court held that the father had abandoned his daughter under section 600A.8(3) after finding that for at least eight years, he had not financially supported the daughter, had "not visited the child at all, let alone monthly during times that he has been able," had "not communicated with the child at all,

let alone regularly during times when he has been unable to visit the child," and had "not lived with the child at any time."

The court also decided that termination of the father's parental rights was in the daughter's best interests. The court reasoned:

> Here, the record is clear that again, since at least 2014, [the father] has not in any way assumed the duties encompassed by the role of being a parent. He has not contributed anything financially for the benefit of the child. Subjectively, his interest in the child may be real, but objectively he has shown no more than half-hearted interest in her, and has demonstrated no real or genuine effort to establish communication with her. He clearly has not maintained any place of importance in [the child's] life. The child does not remember him, nor is she interested in a relationship with him. His filing a Petition for custody and visitation eight years after his last contact with the child is simply too little, too late.
> The court respects and admires [the father] for the steps he has taken to reverse the course of his life. In the time it took for that to happen, however, [the child's] life has gone on. Over two-thirds of [the child's] life has been lived since [the father] last played any role in it.

This timely appeal followed.

## II.

Private termination proceedings under Iowa Code chapter 600A are reviewed de novo. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). Our prime concern is the best interests of the child, but the parents' interests "shall be given due consideration." Iowa Code § 600A.1(1); *see also In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

The moving party in a chapter 600A action must satisfy a two-step analysis by clear and convincing evidence: (1) proving one of the grounds for ordering

termination of parental rights under section 600A.8, and (2) showing that termination is in the best interests of the child. *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018).

The district court relied on the statutory ground of abandonment under section 600A.8(3). For a child who is at least six months old—like the daughter here—that section provides that "a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child." Iowa Code § 600A.8(3)(b). That required contact must be "demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means" and by any one of three means of contact: (1) visiting at least monthly; (2) communicating regularly when unable to visit; or (3) "[o]penly living with" and "holding himself or herself out to be the parent of the child" during a six-month period in the year before the termination hearing. Iowa Code § 600A.8(3)(b)(1)–(3); *see also id.* § 600A.2(20) (defining "[t]o abandon a minor child"). A parent's subjective intent "does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c).

The father has been incarcerated on and off for most of the child's life. Over eight years, the father made no attempts to visit and only a handful of attempts to communicate with his daughter. Since 2014, he has not financially supported her. The father "cannot use his incarceration as a justification for his lack of relationship with the child." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). The father's limited contacts must be viewed in the light that total desertion is not required for a showing of abandonment. *See id.* Our courts "do not hold or suggest that termination is a necessary result of conviction of a crime and resulting

imprisonment." *Id.* But the father cannot use his incarceration as an explanation for his lack of relationship with the child, especially since there were times that he was not in prison or jail.

The father is correct that a parent's persistent interference with the other parent's attempts at substantial and continuous or repeated contact may defeat a claim of abandonment. *See, e.g.*, *In re R.G.*, No. 21-1744, 2022 WL 2160691, at *4 (Iowa Ct. App. June 15, 2022). But a parent can only persistently interfere when persistent attempts at contact have been made. The record here shows a failure by the father to make a connection with the child from 2014 to April 2022. As she testified, the mother never had the chance to block the father from communicating with the child during these eight years because he never tried to contact the child. This lengthy period of minimal contact rises to the level of abandonment and cannot be salvaged by his belated requests for contact in 2022. On our de novo review, we conclude that the mother has proved the statutory ground of abandonment under section 600A.8(3) by clear and convincing evidence. *See In re K.L.*, No. 22-1037, 2023 WL 2396366, at *2–3 (Iowa Ct. App. Mar. 8, 2023) (finding that the father abandoned his child after long periods of incarceration and a failure to visit or communicate with the child).

Turning to the second step of the analysis, we also agree that termination of the father's parental rights is in the best interests of his daughter. In considering the best interests of the child, we apply section 600A.1, which directs the court to decide "whether a parent has affirmatively assumed the duties of a parent." Iowa Code § 600A.1(2); *see also In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). In making this decision, we consider—among other factors—"the fulfillment of

financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life."  Iowa Code § 600A.1(2).  We "give primary consideration to the child's safety" and the best placement to encourage their long-term nurturing and growth.  *B.H.A.*, 938 N.W.2d at 232 (citing Iowa Code § 232.116(2)).  We likewise consider "the child's emotional and psychological health and the closeness of the parent–child bond."  *Id.*  (citing Iowa Code § 232.116(2), (3)(c)).

The father focuses his best-interests-of-the-child argument on his rehabilitation efforts, such as attending a substance-abuse boot camp, weekly meetings for his alcohol abuse, and parenting classes.  Because of turning his life around, he believes that he may provide many years of benefit to his daughter.  We—like the district court—commend the growth the father made in addressing his alcohol abuse.  But he has scarcely embraced "the duties encompassed by the role of being a parent."  Iowa Code § 600A.1(2).  True, he recently filed an action to establish custody.  But as the district court found, this is "too little, too late."  For eight years he did not make a sincere effort to contact his daughter or maintain an important place in her life.  And the record shows no ongoing parent–child bond.  The daughter's guardian ad litem observed:

> [The daughter] does not know [her father].  The fact this child is so untroubled by the lack of involvement by [the father] in her life says a lot about her need for him, and that she is adequately supported and cared for by those around her at present. . . .  [The daughter] views other relatives and family friends as the supportive people she needs in life.

The daughter is well-adjusted and succeeding in her life without the father. She is emotionally and financially supported by her mother. The interests of the child will be best served by the termination of the father's parental rights. *See In re B.L.A.*, 357 N.W.2d 20, 23 (Iowa 1984). We affirm the decision of the district court.

**AFFIRMED.**