**IN THE COURT OF APPEALS OF IOWA**

No. 24-0680
Filed December 4, 2024

**IN THE INTEREST OF B.C.,**
**Minor Child,**

**A.V., Mother,**
　　Petitioner-Appellee,

**N.C., Father,**
　　Respondent-Appellant.
_____

　　Appeal from the Iowa District Court for Boone County, Ashley Beisch, Judge.

　　The father appeals the termination of his parental rights in a private termination action. **AFFIRMED.**

　　Colin McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant.

　　Jesse A. Macro Jr. of Macro Law, LLP, Des Moines, for appellee.

　　Kaitlyn Dimaria of Dimaria Law P.L.L.C., West Des Moines, attorney and guardian ad litem for minor child.

　　Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

The mother petitioned to terminate the father's parental rights to B.C., born in 2018, in a private termination action. *See* Iowa Code § 600A.5 (2023). The district court granted the petition on multiple grounds, which the father challenges on appeal. He argues he did not abandon the child under section 600A.8(3)(b) or fail to financially contribute to the child without good cause under section § 600A.8(4). Both the mother and the child's guardian ad litem (GAL) filed appellate briefs in support of the district court's decision. Following our de novo review, we affirm.

**I. Background Facts and Proceedings.**

The mother and father began a romantic relationship in 2017, and B.C. was born the next year. The parents were married in July 2019; they lived together as a family for at least a few years. The mother filed for divorce in 2021, and a default decree was granted. This gave the mother sole legal custody and physical care of B.C. It also required the father to pay $584.27 per month in child support.

In spite of the divorce decree, the father continued to live with the mother and B.C. off and on until January 2023. The father was domestically violent toward the mother, as evidenced by photos introduced at the termination trial, both parents' testimony, and text messages showing the father's apologies for his actions. B.C. was generally present in the home when the abuse occurred. The parties cycled through three or four no-contact orders, with the mother repeatedly

agreeing to have them dismissed. The mother obtained another no-contact order in January 2023[1]; she testified this was the last time the father lived in the home.

The mother petitioned to terminate the father's parental rights in December.

As of the March 2024 termination trial, the mother was remarried; B.C.'s step-father testified about the "every[ ]day dad duties" he performs and his desire to adopt B.C. During the father's testimony, he admitted he physically abused the mother on "numerous occasions" and belittled B.C., who has been diagnosed with autism spectrum disorder and attention-deficit/hyperactivity disorder. The father was engaged in mental-health therapy but conceded that he is still prone to anger outbursts. Although he had been sporadically employed, he was unemployed at the time and living at a men's recovery house (although he did not have issues with substance abuse). The house manager was a support for the father, and he supervised the one visit the father set up with B.C.

The district court granted the petition to terminate the father's parental rights pursuant to section 600A.8(3)(b) and (4), ruling in part:

> [The father] wants what is best for B.C. and loves B.C. in the best way he can. But, many times what actually manifests for [the father] as actions towards B.C. aren't in B.C.'s best interest. [The father] seemed to acknowledge his limitations in ability to parent and do what's best for B.C. [He] is not able to provide for B.C. financially, emotionally or for his physical care. What's best for B.C. is a stable, consistent and loving home—free of aggression and violence.

The father appeals.

---

[1] The no-contact order was later extended and was effective until February 7, 2025.

**II. Standard of Review.**

We review private termination proceedings de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (citation omitted).

**III. Discussion.**

"Private termination proceedings under Iowa Code chapter 600A are a two-step process." *Id.* The petitioning parent "must first prove by clear and convincing evidence the grounds for ordering termination of parental rights." *Id.* And second, they "must prove by clear and convincing evidence that termination is in the best interest of" the child. *Id.*

Here, the district court concluded two grounds for termination were proved—section 600A.8(3)(b) and (4). We may affirm on either ground if we conclude it is supported by record evidence. *See In re B.L.A.*, 357 N.W.2d 20, 22 (Iowa 1984) ("[I]f one of the grounds for termination is established by clear and convincing evidence, the termination will be upheld."). We choose to review section 600A.8(4), which allows the court to terminate when "[a] parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause."

The father does not dispute that he was court-ordered to pay $584.27 per month in child support[2] as part of the 2021 decree of dissolution of marriage and failed to do so—paying only $90.27 through the child support recovery unit from

---

[2] The mother testified this number was calculated based on the father's job at the time she petitioned for dissolution, which paid $15 per hour.

June 1, 2023, through the termination trial in March 2024.[3] Rather, he focuses on the argument that he has good cause for not paying more. He asserts that due to a brain injury he suffered in 2014, he is unable to maintain employment, which prevented him from contributing more to the child financially. According to the GAL's report, during his interview, the father told her "he is capable of work, but that it is difficult to find employment due to his focus, memory and recall issues related to his brain injury." Yet, he did not report any recent efforts to find employment.

Deciding whether a parent is without good cause is a question of fact, and our inquiry largely focuses on a parent's ability to pay. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998) ("We described the meaning of 'without good cause' . . . . We indicated 'the key factual issue . . . concerns the father's ability to pay the ordered child support.'" (citations omitted)). The burden is on the petitioning parent to establish the other parent had the ability to pay child support. *Id.* at 601–02. "Although it is not necessary for the petitioner to show that the parent was willful in failing to pay, the parent's intent is clearly tied to an ability to pay." *Id.* at 602.

While the father has struggled to maintain constant, full-time employment, he has had periods of employment earning $15 and even $20 per hour.[4] He also obtained his commercial driver's license within the last few years. In addition to

---

[3] While the divorce decree was entered September 2021, the mother did not sign up with child support recovery unit until later. She introduced an exhibit showing the father had made only the one payment of $90.27 through January 22, 2024. And she testified that she had not received any other payment since then.
[4] The father testified he earned $20 per hour for two months while he was training to be a semi-truck driver.

working odd jobs for supplemental income, the father received approximately $800 per month from Social Security.[5] Yet the father made only one payment through the child support recovery unit and seemed to only provide financial support to the mother to help cover his part of a cell phone bill. And the mother testified when the father was working full-time, he made sure that his other obligations were paid but not the support, which convinced her she needed to apply to the child support recovery unit to set regular payments. But before that was done, the mother admitted there were times the father sent her "$20 here or $50 there" during the period he was working full-time. She characterized these payments, at least in part, as the father paying for his cell phone, which continued to be part of the family plan. This is supported by the GAL's report to the court, which states the father "admit[ted] he immediately ceased all efforts to support the child when he found out [the mother] had shut his phone off in December." During the GAL's interview with the father, he told her that the mother does not need his money to support B.C.[6]

The father's child-support obligation may have been set too high—it is not clear he has ever earned an annual income of $30,000, on which the obligation is apparently based. For purposes of this review, we are less focused on the total amount that the father is behind on those court-ordered payments and more focused on the fact the father voluntarily chose not to support B.C. even in some lesser, more feasible amount. *See In re Kelley*, 262 N.W.2d 781, 785 (Iowa 1978)

---

[5] There was conflicting evidence at trial whether the father received supplemental income or disability benefits.

[6] Yet in an earlier text message to the mother, the father recognized she was "financially strapped" and he would make up for it.

(affirming termination where father was "financially able to contribute some amount" of child support "but he voluntarily chose not to do so"). Like in *Kelley*, "[e]ven though [the father's] earnings may have been insufficient at times to enable him to pay the full amount ordered, they were almost always sufficient to enable him to pay something." *Id.* Making the decision to not provide your child any financial support is not "good cause." *See Klobnock v. Abbott*, 303 N.W.2d 149, 152 (Iowa 1981) ("[T]he legislature intended termination for nonsupport to occur where a parent's failure to pay manifests indifference to a child and is therefore akin to abandonment."). So, we agree with the district court that termination is appropriate under section 600A.8(4).

And because the father does not address the district court's best-interests analysis on appeal, we affirm the district court's termination of his parental right without proceeding to the second step of the analysis. *See* Iowa R. App. P. 6.903(2)(a)(8)(3); *see also In re R.V.*, No. 24-0547, 2024 WL 4619941, at *3 (Iowa Ct. App. Oct. 30, 2024) (affirming termination without considering the best-interests step when parent did not contest it); *In re L.S.*, No 22-0688, 2022 WL 3907756, at *1 (Iowa Ct. App. Aug. 31, 2022) ("But our review on appeal is confined to those issues that—after being properly preserved—are actually raised and briefed on appeal by the parent challenging termination.").

**AFFIRMED.**