# IN THE COURT OF APPEALS OF IOWA

No. 24-1846
Filed June 18, 2025

**IN THE INTEREST OF K.M.,**
**Minor Child,**

**S.H. and M.H.,**
        Petitioners-Appellees,

**A.M.,**
        Respondent-Appellant,

**and**

**D.G.,**
        Respondent.

_____

Appeal from the Iowa District Court for Bremer County, Peter B. Newell, Judge.

A mother appeals the private termination of her parental rights. **AFFIRMED.**

Joseph G. Martin, Cedar Falls, for appellant.

Jamie L. Schroeder of Nelson & Toenjes PLLC, Shell Rock, for appellees.

Elizabeth Wayne, Parkersburg, attorney and guardian ad litem for minor child.

Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**GREER, Presiding Judge.**

The maternal grandparents of a child petitioned to terminate the parental rights of their daughter, the mother of K.M., and the child's father.[1] The maternal grandparents had cared for the child since she was placed in a guardianship when the child was approximately eighteen months old, more than three years before initiating termination proceedings. After trial, the court found grounds for the termination, including that the mother abandoned her daughter under Iowa Code section 600A.8(3) (2024) by failing to maintain consistent contact and by failing to financially contribute to the support of the child under section 600A.8(4).

We find the grandparents established that the mother abandoned the child, thus a ground for termination was established, and that it is in the child's best interests to terminate the mother's parental rights. We affirm.

**I. Background Facts and Proceedings.**

In May 2024, the grandparents petitioned to terminate the parent-child relationship between the parents and their grandchild, four-year-old K.M., born in October 2019. K.M. had been living with the grandparents since April 2021. In 2021, the Iowa Department of Health and Human Services (HHS) became involved with the mother and the child over concerns that the mother was involved with illegal drug use, including drug sales. Then, because the mother was uncertain as to whether she was going to prison for committing a criminal act while on probation, there was a need for the guardianship. HHS agreed to close their case involving the mother and child once the guardianship with the grandparents was established.

---

[1] The father did not appear for the termination trial, and his parental rights were also terminated; he is not a party to this appeal.

Prior to the October 2024 termination trial, the guardian ad litem (GAL) reported that the child, now just short of five-years-old, called the grandparents "mommy" and "daddy" and that she was healthy and happy in their home. At the time of the trial, the grandparents had served as the child's guardians for over three and a half years and the mother had not seen the child for almost a year.

The grandmother testified at the termination trial, as did the mother. All confirmed that since April 2021, the child had not lived with the mother. To that end, the mother testified that she was unrepresented in the guardianship and did not understand how she might regain care, but she had not attempted court intervention during those years to seek contact. The grandmother outlined the visitation history, starting with the guardianship, including setting out the times the mother was incarcerated and not involved in the child's life as well as times the mother was in the area but not involved with the child. For example, once out of jail, the mother went to a halfway house before absconding and traveling to Colorado for about a month. Once back from Colorado, she again was placed in jail; through this chaotic time, the mother had less and less contact with the child. And at the mother's last visit with K.M., which took place in October 2023, the mother brought her boyfriend to the visit who the grandmother did not believe was a good or safe influence on the child.

The mother conceded that the communication with the grandmother and the child got "less and less . . . because of me." The mother also agreed that she was aware of the child's activities but did not go and had not been involved with the child's medical care since April 2021. And she confirmed she refused visits with the child if the visits were to be supervised by the grandparents. At trial, the

mother testified she had been in jail for about three months in 2024 related to drug charges. As for the child support, the mother admitted receiving a $30,000 car accident settlement but stated, "I just wasn't going to outright give [the grandparents] any money when I wasn't even able to see her, you know what I'm saying?"[2] The court determined that the grandparents met their burden to establish grounds for termination under both section 600A.8(3) and (4). The mother appeals.

## II. Standard of Review.

"Private termination proceedings under chapter 600A are reviewed de novo." *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). Still, "we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

## III. Discussion.

"Private termination proceedings under Iowa Code chapter 600A are a two-step process." *B.H.A.*, 938 N.W.2d at 232. "First, a petitioner must show 'clear and convincing' evidence that one or more [statutory] grounds for termination exist. Second, the petitioner must prove that termination is in the child's best interest." *In re L.H.*, No. 24-1558, 2025 WL 1177879, at *2 (Iowa Ct. App. Apr. 23, 2025) (internal citation omitted). Here, the grandparents have the burden of proving the grounds for termination by clear and convincing evidence. *See In re G.A.*, 826 N.W.2d 125, 129 (Iowa Ct App. 2012). The juvenile court found termination was proper under subsections (3) and (4) of section 600A.8. Section 600A.8(3)

---

[2] At the time of the trial, the mother had only made two payments—both less than $30—towards child support, both gathered through garnishment.

concerns the abandonment of a child by their parent, while section 600A.8(4) allows for termination due to the failure to financially contribute to the child without good cause.[3]  On this court's review of the record, we address the ground under section 600A.8(3).[4]

Section 600A.8(3)(b) states that if the child is six months or older:

a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The mother concedes in her appellate brief that the relationship between her and the grandmother had "devolved as a result of concerns of mental health instability, substance use and criminal charges [pertaining to the mother]."  But there was no evidence that the grandparents prohibited the mother from having visits, they only required that the visits remain supervised.  The mother made the choice to stay

---

[3] Iowa Code section 600A.8(4) sets forth this ground for termination: "A parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause."

[4] While we do not detail our analysis under section 600A.8(4), we find the record supported termination under that ground as well, but we find the evidence supporting abandonment to be stronger.

away rather than seeing the grandmother. Yet even when the grandmother proposed another supervisor, the mother did not follow through. Instead, the mother went a year without visits or contact with the young child and made minimal efforts to support the child as required under chapter 600A. And while the mother did spend time in jail, she cannot use her own wrongful criminal actions as justification for her lack of contact. *See G.A.*, 826 N.W.2d at 129. Although the grandmother received various telephone calls or text messages from the mother, the content was never about the child. Instead, they were often abusive communications directed at the grandmother, such as the mother claiming she would "beat [her] bloody" or "will spit on [her] grave." Even so, from this record we find that the grandparents did not prohibit contact between the child and mother; they only mandated reasonable protections. *See In re J.V.*, 13 N.W.3d 595, 602–06 (Iowa 2024) (concluding parent abandoned child under section 600A.8(3) where guardians placed some restrictions on parent-child contact but did not prevent the parent from visiting).

Chapter 600A places the burden on the petitioners to show that the mother "either (1) failed to contribute financially to [the child's] support in a reasonable amount according to her means or (2) failed to maintain 'substantial and continuous or repeated contact' with [the child]." *Id.* at 604 (quoting Iowa Code § 600A.8(3)(b)). Here, the mother had no justification for failing to maintain contact with the child either by visits or by contributing toward the child's financial support. "Abnegation of court-ordered financial responsibility to a child is the equivalent of abandonment. A parent who unjustifiably refuses to meet a support obligation

manifests complete indifference to his child." *Klobnock v. Abbott*, 303 N.W.2d 149, 152 (Iowa 1981) (cleaned up).

The mother's lack of involvement and financial support stemmed from the mother's desire to avoid contact with the grandmother and not provide funds if it meant that the money would go to the grandparents. The mother showed a complete indifference in financially supporting her child. And, from another vantage point, the record offered no reasons why the mother was not physically or financially able to meet her parental role as outlined in section 600A.1. When the mother was not in jail, she lived in the same general vicinity of the grandparents, yet she still chose not to maintain monthly visits with the child over the period of a year. She did not inquire about the child's medical care or attend or involve herself with the child's activities.

Accordingly, we find the grandparents established by clear and convincing evidence that the mother abandoned the child, establishing a statutory basis for termination under section 600A.8(3). Once statutory basis for termination is shown, we move to step two of our analysis—the best interests question. *See In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018).

"The primary interest in termination proceedings is the best interests of the child." *R.K.B.*, 572 N.W.2d at 601. The grandparents had the burden to prove by clear and convincing evidence that termination is in the best interests of the child. *See J.V.*, 13 N.W.3d at 603. Chapter 600A.1(2) sets out the considerations involved with this question:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed

the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

"A parent has a basic [duty] to support a minor child." *In re B.L.A.*, 357 N.W.2d 20, 21 (Iowa 1984). "The legislature has determined that it is in the best interests of a child to terminate a parent-child relationship if the parent refuses to support the child." *Id.*

Here, the mother has made only marginal efforts to remain in contact with her child. In her own closing statement, the mother admitted that visitation had been "very limited" in the year before the termination trial. The last time she saw her daughter was October 11, 2023, approximately a year before trial, when the grandmother took the child to a Walmart parking lot for a brief visit. The mother has made no effort to attend the child's dance performances or gymnastics events and has not shown interest in the child's medical needs. Although the mother did give the child a birthday present in October of 2023, she did not send a gift or card during the winter holidays.

The mother reports she used to call or video her child nearly every night during periods of incarceration but, according to the grandmother's testimony, the mother's "phone calls at night, and stuff, got less and less when she had more freedoms." The mother agreed with this assessment, taking ownership for the gradual decrease and then apparent absence of contact with her child. She testified:

> Yeah. And, I mean, and I will—I will say that the reason it continued to get less and less was because of me, but the reason I

> did it was because I felt like I couldn't—there was no push or shove. It was just stuck. And so it was like—at that point it was like what more can I do, you know?

She continued to acknowledge that, at times, the child's grandmother took the child up to Waterloo, where the mother resided, to visit another relative. Even when told of the child's proximity, the mother failed to see her child. The mother's absence and dearth of effort leads us to conclude she failed to "maintain a place of importance in the child's life." Iowa Code § 600A.1(2)

The grandmother testified the child is doing well in the grandparents' care, participating in a flurry of activities and calling her grandparents "mom" and "dad." The child's grandparents are intent on adopting the child if parental rights are terminated. After considering all evidence on record, we find termination is in the best interests of the child.

"[W]e have also borrowed from Iowa Code section 232.116(2) and (3) to flesh out the best-interest-of-the-child test." *Q.G.*, 911 N.W.2d at 771. In considering the child's long-range, as well as immediate interests, we find that continuing the guardianship, as the mother suggests, would not address the child's mental and emotional needs where, as here, the mother has not been involved for over a year. In considering the best placement for furthering the long-term nurturing and growth of the child, we conclude a permanent home with the grandparents is the answer. *See* Iowa Code § 232.116(2). The child has known a stable environment since April 2021 and that continuity is in the best interests of the child here. Because the grandparents showed by clear and convincing

evidence that the termination of the mother's parental rights were in the child's best interests, we affirm.

**AFFIRMED.**